**FRANKLIN MINT CORPORATION,**
**Appellant,**

v.

**MASTER MANUFACTURING**
**COMPANY, Appellee.**

**Appeal No. 81–559.**

United States Court of Customs
and Patent Appeals.

Dec. 10, 1981.

Ronald L. Panitch and Roberta L. Jacobs, Philadelphia, Pa., for appellant.

Jay J. Rice, Clifton, N. D., for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and NIES, Judges.

MILLER, Judge.

This is an appeal from a decision of the Patent and Trademark Office Trademark Trial and Appeal Board ("board") dismissing the opposition of appellant Franklin Mint Corporation ("Franklin") to the registration of a mark by appellee Master Manufacturing Company ("Master").[1] We affirm.

*Background*

Franklin is the owner of a federal trademark registration for the mark reproduced below ("FM design").[2]

1. 209 USPO 350 (1980).

2. Registration No. 822,521, January 17, 1967, for: "METAL AND ALLOY COINS, TOKENS, MEDALS, MEDALLIONS, AND SOUVENIR, NOVELTY, AND COMMEMORATIVE COINS."

3. Application No. 151,206, filed December 7, 1977, for: "JEWELRY." First use and first use in commerce alleged: July 15, 1977.

In addition to coins, medals, and a variety of other collector-type products for which the mark is used and registered, Franklin also asserts rights based on prior use of its marks for jewelry, including charms, medallions, bracelets, rings, brooches, pendants, cufflinks, tie tacks, and key tags.

On December 7, 1977, Master filed an application to register the following trademark ("MM design") for use on jewelry:[3]

Franklin filed a notice of opposition to Master's application on May 22, 1978, alleging that "MM design" so resembles "FM design,"[4] as registered and used, that Franklin would be damaged if a registration were granted to Master.

Uncontradicted evidence establishes that "FM design" is a well-known mark, that Franklin's promotional outlay under the marks for the years 1972–78 exceeded $170,000,000, and that sales of goods bearing Franklin's marks for the same years exceeded $940,000,000. The board found that no distinction can be made between the jewelry products of the parties and that they can be encountered under the marks in issue by the same potential purchasers. It presumed that Master markets all types of jewelry, including products similar to opposer's, through all channels of trade normally utilized to distribute jewelry to all classes of purchasers of such goods.

"FM design" is applied by impressing the mark on metal articles as a "mintmark." "MM design" has been applied in the same manner. The marks as used on the exhibits

4. The notice of opposition also cited Franklin's registration of "FM," registration No. 908,205, registered February 16, 1971, for: "NON-MONETARY COINAGE PRODUCTS—NAMELY, TOKENS, MEDALS, AND MEDALLIONS." However, the arguments of the parties have centered around the more relevant "FM design."

submitted by the parties are very small, measuring roughly one millimeter across.

The board, considering the "commercial impressions . . . generated by the marks as a whole," held that "applicant's mark within its diamond design is distinctly different from opposer's 'FM design' mark . . . and does not at all suggest or conjure up opposer's mark."

## OPINION

The issue to be resolved is whether the involved marks, when applied to jewelry in the same manner and offered to the same class of purchasers through the same channels of trade, would be likely to cause confusion or mistake regarding the origin or sponsorship of the goods.

Those who comprise the purchasing public for these goods ordinarily must depend upon their past recollection of marks to which they were previously exposed. *Mishawaka Rubber & Woolen Mfg. Co. v. Bata Narodni Podnik*, 42 CCPA 872, 878, 222 F.2d 279, 284, 105 USPQ 432, 436 (1955). There is no merit in Franklin's contention that the board, while acknowledging that a side-by-side comparison was improper, relied upon such a comparison in dismissing the opposition.

Franklin takes the position that the framing diamond of Master's mark constitutes "subordinate matter" which "aggravates the likelihood of confusion." This argument also is without merit. It is axiomatic that a mark should not be dissected and considered piecemeal; rather, it must be considered as a whole in determining likelihood of confusion. *See Massey Junior College v. Fashion Institute of Technology*, 492 F.2d 1399, 181 USPQ 272 (Cust. & Pat.

App.1974). We, therefore, disagree with Franklin that the overall commercial impression created by both marks is a center bar flanked by diagonal lines forming "two thirds of multiple triangles and . . . lines forming sharp angles with no curves." Franklin would apparently have us ignore the portions of the diamond in Master's mark which appear in lighter print as well as other distinguishing features.

Franklin raises a question that appears to be of first impression before this court, namely: whether the very small size of the marks as applied to the goods is a proper consideration in determining likelihood of confusion.[5] In the past, the court has determined a likelihood of confusion where an allegedly distinguishing feature of a mark was so inconspicuously or indistinctly displayed that it would be overlooked. *Phillips Petroleum Co. v. C. J. Webb, Inc.*, 58 CCPA 1255, 442 F.2d 1376, 170 USPQ 35 (1971); *Mishawaka Rubber & Woolen Mfg. Co. v. Bata Narodni Podnik, supra.* On the other hand, very small marks can function as an indication of source or origin. "The important question is not how readily the mark will be noticed, but whether, when it is noticed, it will be understood as indicating origin of the goods." *In re Singer Manufacturing Co.*, 45 CCPA 1002, 1005, 255 F.2d 939, 941, 118 USPQ 310, 312 (1958).

As a mark is reduced in size, fine detail may become lost. Nevertheless, as long as a reduced-size mark retains a unique configuration discernible through the methods by which purchasers or users of the goods ordinarily view it, trademark significance is possible.[6] Thus, the size of the mark actually used is relevant only for

---

5. On at least one occasion, the board, in sustaining an opposition, has relied on the fact that the respective marks, as applied to identical products, were "barely visible." *American Optical Corp. v. Avant-Garde Optics*, 174 USPQ 414 (TTAB 1972).

6. We note that the mintmarks on U.S. currency, although in a strict sense not trademarks, have long served to inform numismatists where a coin was struck. Significantly, such similar mintmarks as "P" and "D" appear in a size much smaller than the marks on the exhibits presented by Franklin and Master. The overall commercial impression of small marks can obviously be affected by both the degree of care with which they are viewed by persons to whom the marks have significance and the method by which the marks are ordinarily viewed by such persons (*e.g.*, a magnifying glass used by jewelers). No evidence on these points was presented to the board by appellant.

the purpose of determining what the mark is.[7]

Accordingly, in the case before us, opposer's "FM design" mark may be considered from two viewpoints: (1) the larger, sharply defined "FM design" in Franklin's registration, and (2) the small, less distinct "FM design" which Franklin has applied to its goods since 1965. Because we have before us both Master's application version of its mark and a mini-version as applied to its jewelry, appropriate comparisons can be readily made. Cf. Phillips Petroleum Co. v. C. J. Webb, Inc., supra.

On the basis of appropriate comparisons of the involved marks as a whole, we hold that there is no likelihood of confusion between the marks considered from either viewpoint. With respect to the small, less distinct version of Franklin's mark, we observe that the angled segments immediately abutting the vertical center bar have become almost indistinguishable, which effectively destroys the effect of "two thirds of multiple triangles and ... lines forming sharp angles with no curves" relied upon by Franklin.

The decision of the board is affirmed.

AFFIRMED.

---

**7.** Because appellant's opposition is based on both prior registration and prior use of an "FM design," it is appropriate to determine whether the mark actually used is different from the registered mark.