This Opinion is a
Precedent of the TTAB

Mailed: June 25, 2015

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re Aquamar, Inc.*

_____

Serial No. 85861533

_____

Robert E. Nail of Locke Lord LLP for Aquamar, Inc.

Jason F. Turner, Trademark Examining Attorney, Law Office 108,
    Andrew Lawrence, Managing Attorney.

_____

Before Quinn, Kuhlke and Adlin,
    Administrative Trademark Judges.

Opinion by Adlin, Administrative Trademark Judge:

Aquamar, Inc. ("Applicant") seeks registration of the mark MARAZUL, in

standard characters, for "Fish and seafood products, namely, frozen and fresh

processed fish and seafood, and imitation crab meat" in International Class 29.[1] The

Examining Attorney refused registration: (1) under Section 2(d) of the Act,

15 U.S.C. § 1052(d), on the ground that Applicant's mark so resembles the

---

[1] Application Serial No. 85861533, filed February 27, 2013, based on first use dates of February 15, 2013. The application indicates that "The wording MARAZUL has no meaning in a foreign language," even though, as set forth below, the Examining Attorney required Applicant to provide a translation statement based on evidence that "mar azul" means "blue sea" in Spanish.

previously-registered mark BLUE SEA, in standard characters, for "non-live fish and frozen fish," also in Class 29,[2] that use of Applicant's mark in connection with Applicant's goods is likely to cause confusion or mistake or to deceive; and (2) because Applicant failed to comply with the requirement that it provide a translation of the non-English words in the mark. After the refusals became final, Applicant appealed and Applicant and the Examining Attorney filed briefs.

## **The Examining Attorney's Requirement that Applicant Provide a Translation Statement**

With the first Office Action, the Examining Attorney provided evidence that "mar azul" means "blue sea" in Spanish. Office Action of June 17, 2013 (printout from Bing Translator). Accordingly, he required that Applicant "submit an English translation of all foreign wording in the mark." Trademark Rule 2.32(a)(9), 37 C.F.R. § 2.32(a)(9) ("[i]f the mark includes non-English wording, an English translation of that wording" must be included in the application). In response, and without addressing or questioning the Examining Attorney's evidence, or submitting any evidence of its own, Applicant denied that its mark means anything:

> Applicant further submits that its proprietary "MARAZUL" mark is a completely arbitrary designation and coined term with respect to Applicant's associated goods, thereby avoiding any likelihood of confusion with the cited registered "BLUE SEA" mark, whether the respective marks are compared in translated or untranslated form … even if the Examining Attorney's suggested division of Applicant's mark into separated elements "MAR" and "AZUL" and suggested translation of such separated elements as "SEA" and "BLUE" were to be

---

[2] Registration No. 3216501, issued March 6, 2007; combined Sections 8 and 15 affidavit accepted and acknowledged.

2

considered (which Applicant asserts would be improper in any event since Applicant confirms that its "MARAZUL" mark is a unitary and inseparable and arbitrary term coined by Applicant having no direct English translation) Applicant emphasizes that such translated elements appear in reverse order as compared to the respective elements of the cited registered "BLUE SEA" mark, thereby highlighting very substantial and meaningful differences between … commercial impression of the respective marks …. In response to the Examining Attorney's requirement for an English translation of all foreign wording in Applicant's "MARAZUL" mark, Applicant submits that "MARAZUL" is an arbitrary coined term and brand created by Applicant and that such term has no direct English translation.

Office Action Response of December 17, 2013.

With the next Office Action, the Examining Attorney provided additional evidence, including three newspaper articles which indicate that "mar azul" is Spanish for "blue sea":

> "… Abigail Woolridge asked about the 'wonderful rum-based drink call (sic) Mar Azul.' That translates as 'Blue Sea' to us gringos." "Island Escape," *The Courier-Journal* (Louisville, Kentucky), Aug. 10, 2011.

> "Last week, three boys and a girl delivered a presentation on a company called Mar Azul, or 'Blue Sea.' The students had to come up with a business plan, slogan and advertising copy in Spanish." V. Dion Hayes, "In Mrs. Savoy's Class, Spanish Comes Alive," *The Washington Post*, April 28, 2005.

> "Nicole Williamson, Laura Dingman, and Leah Welch, all 13, of North Tonawanda Middle School built a city called 'El Mar Azul,' meaning the blue sea." Rachel Gruber, "Designing a City of the Future," *The Buffalo News*, Feb. 2, 2005.

Office Action of January 7, 2014. The Examining Attorney also provided a printout from Applicant's website which states "Marazul™ brand by Aquamar® is the first Surimi Seafood product designed to truly target the US Hispanic market with authentic bilingual packaging." *Id.* ("aquamar.net/consumer-products-3/#Marazul ConsumerBrand"). We note also that Applicant's website depicts its AQUAMAR house mark with a design of wavy blue lines presumably meant to represent a blue sea:



And Applicant's specimens of use of its involved MARAZUL mark illustrate its targeting of "the US Hispanic market with authentic bilingual packaging":

 

Based on the original and supplemental evidence that "mar azul" means "blue sea," the Examining Attorney made final the requirement for a translation statement. Applicant never provided the required translation statement during prosecution. In its Appeal Brief, Applicant again asserts that "'MARAZUL' is an arbitrary, coined, unitary term and brand created by Applicant and that such term has no direct English translation." Applicant's Appeal Brief at 6.

Trademark Rule 2.32(a)(9) requires applications for marks including non-English wording to include an English translation of that wording. *See also*, Trademark Manual of Examining Procedure ("TMEP") § 809 (Jan. 2015). Furthermore, "[t]he Office may require the applicant to furnish such information …

as may be reasonably necessary to the proper examination of the application." Trademark Rule 2.61(b), 37 C.F.R. § 2.61(b).

Applicant's argument that it need not comply with the translation requirement because its mark is "unitary and inseparable" is not well taken. There is no evidence that combining "mar" and "azul" into a single term without a space between the constituent words results in the mark creating a commercial impression any different from MAR AZUL with a space between the constituent words, especially where "mar azul" has been shown to have a specific meaning consistent with Applicant's goods.[3] *See, e.g., In re Carlson*, 91 USPQ2d 1198, 1200 (TTAB 2009) (URBANHOUZING merely descriptive of real estate brokerage, real estate consultation and real estate listing services); *In re A La Vieille Russie Inc.*, 60 USPQ2d 1895, 1897 n. 2 (TTAB 2001) ("the compound term RUSSIANART is as merely descriptive as its constituent words, 'Russian Art'"); *In re Gagliardi Bros., Inc.*, 218 USPQ 181 (TTAB 1983) (BEEFLAKES merely descriptive of thinly sliced beef); *In re Orleans Wines, Ltd.* 196 USPQ 516 (TTAB 1977) (BREADSPRED merely descriptive of jellies and jams). *See also*, TMEP § 809 (the translation requirement "also applies to compound word marks comprised of two or more distinct words (or words and syllables) that are represented as one word, in which one or more of the words in the mark appears to be non-English wording that would clearly be perceived as a distinct word(s) within the compound."). Moreover, because Applicant's MARAZUL brand is "designed to truly target the US Hispanic market

---

[3] The English meaning of "mar azul" is also consistent with the design accompanying Applicant's house mark.

with authentic bilingual packaging" for Applicant's fish, Applicant's claim that the mark "is a completely arbitrary designation and coined term with respect to Applicant's associated goods" is inconsistent with the evidence of record and not credible.[4]

Therefore, the refusal to register based on Applicant's failure to comply with the requirement to include an English translation of the non-English wording comprising its mark is affirmed.

### Likelihood of Confusion

Our determination under Section 2(d) is based on an analysis of all probative facts in evidence that are relevant to the factors bearing on the issue of likelihood of confusion. *In re E.I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973); *see also In re Majestic Distilling Company, Inc.*, 315 F.3d 1311, 65 USPQ2d 1201, 1203 (Fed. Cir. 2003). In any likelihood of confusion analysis, two key considerations are the similarities between the marks and the similarities between the goods. *See Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976) ("The fundamental inquiry mandated by § 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks.").

Turning first to the goods and channels of trade, they are in part identical, as Applicant and Registrant both offer "frozen fish," and Registrant's "non-live fish"

---

[4] In any event, even if Applicant did coin its mark without intending it to have the meaning of "mar azul," the question is not what Applicant intended, but how the mark will be perceived.

encompasses Applicant's fresh processed fish.[5] Neither identification includes any limitations with respect to channels of trade.

Where, as here, Applicant's and Registrant's goods are in part legally identical, we must presume that the channels of trade and classes of purchasers for those goods are the same. *See In re Viterra Inc.*, 671 F.3d 1358, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012) (even though there was no evidence regarding channels of trade and classes of consumers, the Board was entitled to rely on this legal presumption in determining likelihood of confusion); *In re Yawata Iron & Steel Co.*, 403 F.2d 752, 159 USPQ 721, 723 (CCPA 1968) (where there are legally identical goods, the channels of trade and classes of purchasers are considered to be the same); *American Lebanese Syrian Associated Charities Inc. v. Child Health Research Institute*, 101 USPQ2d 1022, 1028 (TTAB 2011).

---

[5] The Examining Attorney also introduced a number of registrations owned by Applicant and third-parties establishing that Registrant's "non-live fish and frozen fish" on the one hand and crab meat and Applicant's "imitation crab meat" on the other may emanate from the same source. Office Action of January 7, 2014. "Third-party registrations which cover a number of differing goods and/or services, and which are based on use in commerce, although not evidence that the marks shown therein are in use on a commercial scale or that the public is familiar with them, may nevertheless have some probative value to the extent that they may serve to suggest that such goods or services are of a type which may emanate from a single source." *See, In re Mucky Duck Mustard Co.*, 6 USPQ2d 1467, 1470 n.6 (TTAB 1998); *see also In re Davey Prods. Pty. Ltd.*, 92 USPQ2d 1198, 1203 (TTAB 2009). However, in view of our findings with respect to Applicant's fresh processed fish and frozen fish and Registrant's non-live fish and frozen fish, we need not make a determination as to Applicant's remaining goods, as it is sufficient for a finding of likelihood of confusion if relatedness is established for any item encompassed by the identification of goods within a particular class in the application. *Tuxedo Monopoly, Inc. v. General Mills Fun Group*, 648 F.2d 1335, 209 USPQ 986 (CCPA 1981); *Inter IKEA Sys. B.V. v. Akea, LLC*, 110 USPQ2d 1734, 1745 (TTAB 2014); *General Mills Inc. v. Fage Dairy Processing Industry SA*, 100 USPQ2d 1584, 1588 n.1 (TTAB 2011), judgment set aside on other grounds, slip op. 91118482 (TTAB Jan. 22, 2014); *Baseball America Inc. v. Powerplay Sports Ltd.*, 71 USPQ2d 1844, 1847 n.9 (TTAB 2004).

The legal identity of Applicant's and Registrant's goods and their overlapping channels of trade and classes of purchasers not only weigh heavily in favor of a finding of likelihood of confusion, but also reduce the degree of similarity between the marks necessary to find a likelihood of confusion. *In re Viterra*, 101 USPQ2d at 1908; *In re Mighty Leaf Tea*, 601 F.3d 1342, 94 USPQ2d 1257, 1260 (Fed. Cir. 2010); *In re Max Capital Group Ltd.*, 93 USPQ2d 1243, 1248 (TTAB 2010).

With respect to the marks, we must compare them "in their entireties as to appearance, sound, connotation and commercial impression." *Palm Bay Imports Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005) (quoting *du Pont*, 177 USPQ at 567). That is, we may not dissect the marks into their various components. *In re Nat'l Data Corp.*, 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985); *see also Franklin Mint Corp. v. Master Mfg. Co.*, 667 F.2d 1005, 212 USPQ 233, 234 (CCPA 1981).

Here comparing the marks, although they are distinct in appearance and sound, their meanings are identical. The record evidence establishes that "mar azul" means "blue sea." Office Action of June 17, 2013 (printout from Bing Translator); Office Action of January 7, 2014 (articles from *The Courier-Journal*, *The Washington Post* and *The Buffalo News*).

> Under the doctrine of foreign equivalents, foreign words from common languages are translated into English to determine similarity of connotation with English word marks. *See Palm Bay Import, Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689 (Fed. Cir. 2005). The doctrine is applied when it is likely that "the ordinary American purchaser would 'stop and translate [the term] into its English

> equivalent." *Palm Bay,* supra at 1696, quoting *In re Pan
> Tex Hotel Corp.*, 190 USPQ 109, 110 (TTAB 1976.).

*In re Thomas*, 79 USPQ2d 1021, 1024 (TTAB 2006).

Spanish is a "common language" in the United States, and we have routinely applied the doctrine of foreign equivalents to Spanish language marks. *In re La Peregrina Ltd.*, 86 USPQ2d 1645, 1648 (TTAB 2008) ("there is no question that Spanish is a common, modern language"); *In re Perez*, 21 USPQ2d 1075 (TTAB 1991); *In re American Safety Razor Co.*, 2 USPQ2d 1459 (TTAB 1987); *In re Hub Distributing, Inc.*, 218 USPQ 284 (TTAB 1983); *Rosenblum v. George Willsher & Co.*, 161 USPQ 492 (TTAB 1969). We also take judicial notice of the August 2013 United States Census Bureau's "Language Use in the United States: 2011" report, which indicates that after English, Spanish is the most commonly spoken language in the United States, and that over 12% of the United States population speaks Spanish.[6]

We further find that ordinary purchasers of fish would stop and translate Applicant's mark into English. In fact, that is essentially Applicant's stated intention, as MARAZUL-branded fish is "designed to truly target the US Hispanic market with authentic bilingual packaging." Office Action of January 7, 2014 (printout from Applicant's website). *See In re American Safety Razor*, 2 USPQ2d at 1460 (" … applicant markets and sells its soap … to Spanish-speaking purchasers. We believe that those bilingual purchasers familiar with registrant's 'GOOD

---

[6] http://www.census.gov/prod/2013pubs/acs-22.pdf. The Board may take judicial notice of census data. *In re Tokutake Indus. Co.*, 87 USPQ2d 1697, 1700 n.1 (TTAB 2008).

MORNING' and design shaving cream would, upon encountering applicant's 'BUENOS DIAS' soap sold with Spanish-language phrases appearing on the container and with the name of the goods appearing in Spanish, be likely to translate 'BUENOS DIAS' into its 'GOOD MORNING' English equivalent and mistakenly believe that the 'BUENOS DIAS' product was a product emanating from registrant and marketed to the Spanish speaking public."). When consumers view Applicant's MARAZUL packaging they will see several Spanish words displayed next to their English equivalents, increasing the likelihood that they will translate MARAZUL. Moreover, Applicant's specimens display the MARAZUL mark in blue, with a blue nautical-themed logo, together with the phrase "productos del mar," further increasing the likelihood that consumers will perceive the separate words "mar" and "azul" in the compound term "marazul" and translate both "mar" and "azul" when used in connection with Applicant's seafood products:



We recognize that the marks' "equivalency in connotation does not, in and of itself, determine the question of likelihood of confusion in this case … the similarity in connotation must be viewed as but a single factor in the overall evaluation of likelihood of confusion." *In re Ithaca Industries, Inc.*, 230 USPQ 702,704 (TTAB

1986) (finding LUPO, for men's and boy's underwear likely to be confused with WOLF for sportswear, in large part because LUPO means "wolf" in Italian). "[W]here the only similarity between the marks is in connotation, a much closer approximation is necessary …." *In re Sarkli, Ltd.*, 721 F.2d 353, 220 USPQ 111, 113 (Fed. Cir. 1983). However, even when there are differences in the sound and appearance of two marks, likelihood of confusion can be found when the equivalency in meaning or connotation outweighs the differences in the marks.

In the context of these identical goods, which come from the sea, there is nothing to separate the meaning of the terms MARAZUL and BLUE SEA, nor is there a different nuance or meaning for either term in their respective languages; they are exact equivalents. *Cf. Sarkli*, 220 USPQ at 113 (SECOND CHANCE and REPECHAGE not exact equivalents); *In re Buckner Enterprises Corp.*, 6 USPQ2d 316 (TTAB 1987) (DOVE not confusingly similar to PALOMA which may be translated into either dove or pigeon). Rather, here, as in a number of prior cases with similar facts, the equivalency in meaning of the marks outweighs the differences in how the marks look and sound. *See Ithaca Industries, Inc.*, 230 USPQ at 704; *see also*, *In re La Peregrina*, 86 USPQ2d at 1649-50 ("LA PEREGRINA and PILGRIM [both for jewelry] are foreign equivalents and, thus, the marks are identical in meaning. This factor outweighs the differences in appearance and pronunciation."); *In re Thomas*, 79 USPQ2d at 1021 (MARCHE NOIR for jewelry likely to be confused with BLACK MARKET MINERALS for retail jewelry store services, despite marks being "decidedly different in sound and appearance," in

large part because "marche noir" means "black market" in French); *In re Perez*, 21 USPQ2d at 1075 (finding EL GALLO for fresh vegetables, namely tomatoes and peppers likely to be confused with ROOSTER for fresh fruit, in large part because "gallo" means "rooster" in Spanish); *In re American Safety Razor*, 2 USPQ2d at 1460 ("While the marks are concededly distinguishable in their appearance and pronunciation, it is our view that the equivalency in meaning or connotation is sufficient, in this case, to find likelihood of confusion."); *In re Hub Distributing*, 218 USPQ at 284; *Rosenblum v. George Wilsher & Co.*, 161 USPQ at 492 (RED BULL for Scotch whiskey likely to be confused with TORO ROJO for rum, in large part because "toro rojo" means "red bull" in Spanish).

On balance, the *du Pont* factors relevant to this case – the similarity of the goods, channels of trade and classes of consumers and similarity of the marks – weigh in favor of a finding of likelihood of confusion.

## Conclusion

In the face of uncontradicted *evidence* that "mar azul" means "blue sea," Applicant's mere *argument* that the mark is an "arbitrary, coined" term is unpersuasive. Accordingly, the translation requirement was appropriate and not met, and confusion is likely given the identical goods, channels of trade and classes of purchasers and connotation of the marks.

*Decision:* The refusal based on Applicant's failure to comply with the translation requirement and the Section 2(d) refusal to register Applicant's mark both are affirmed.