THIS OPINION IS A
PRECEDENT OF THE TTAB

UNITED STATES PATENT AND TRADEMARK OFFICE
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA 22313-1451**
General Contact Number: 571-272-8500

Mailed: March 31, 2016

Pologeorgis

Opposition No. 91197504 (**Parent Case**)
Opposition No. 91197505

*Omega SA (Omega AG) (Omega Ltd.)*

v.

*Alpha Phi Omega*

Before Richey, Deputy Chief Administrative Trademark Judge, Lykos, and Pologeorgis,
  Administrative Trademark Judges.

By the Trademark Trial and Appeal Board:

These consolidated proceedings now come before the Board for consideration of

the motion for summary judgment under Fed. R. Civ. P. 56 by Alpha Phi Omega

("Applicant") on the claims of likelihood of confusion and dilution asserted by Omega

SA (Omega AG) (Omega Ltd) ("Opposer") in each case.[1] The motion is fully briefed,

including supplemental briefing requested by the Board regarding the following

issue: whether a plaintiff, in order to prove a dilution by blurring claim in a Board

proceeding, must establish that its mark became famous prior to any use of the

defendant's involved mark in commerce, whether as a trademark or trade name, or

whether a plaintiff need only establish that its mark became famous prior to the

---

[1] Applicant's change of correspondence address filed on December 28, 2015 and March 12,
2016 are noted. Board records have been updated accordingly.

defendant's use of its involved mark in commerce in connection with the goods and/or services specifically identified in the defendant's subject application or registration.[2]

## I. Background

Applicant seeks to register on the Principal Register under Section 2(f) of the Trademark Act, 15 U.S.C. § 1052(f), the following two marks:

---

[2] On December 9, 2015, Applicant filed a submission entitled "Second Notice of Supplemental Legal Authority Pertinent to Alpha Phi Omega's Motion for Summary Judgment." By way of this submission, Applicant wishes to bring to the Board's attention the Federal Circuit's decision in *Jack Wolfskin Ausrustung Fur Draussen GmbH & Company KGAA v. New Millennium Sports, S.L.U.,* 797 F.3d 1363, 116 USPQ2d 1129 (Fed. Cir. 2015). Opposer has moved to strike the submission on the grounds that (1) it constitutes an impermissible sur-reply; and (2) the submission is in violation of the Board's March 4, 2015, order which, *inter alia*, prohibits the parties from filing any unconsented motion without prior Board approval. The Board notes that a party may bring to the attention of the Board supplemental legal authority issuing after briefing of a summary judgment motion, e.g., a precedential decision from the Federal Circuit or Board that is relevant to the issues under consideration, along with a brief description of its significance. Trademark Trial and Appeal Board Manual of Procedure ("TBMP") § 528.05(a)(1) (2015). However, such a submission may not be used as a subterfuge to avoid the prohibition on filing sur-replies or further briefing of such motions. *Id*. Applicant's submission does not constitute a sur-reply because it does not advance any additional arguments in support of its motion for summary judgment, but merely serves to notify the Board of a Federal Circuit decision issued after Applicant's summary judgment motion was briefed, as well as provide the relevance of that decision to issues raised in Applicant's motion. Moreover, the Board does not construe Applicant's submission as an unconsented motion seeking some form of relief from or action by the Board. Accordingly, Opposer's motion to strike Applicant's submission is denied. The Board has taken the decision identified in Applicant's submission, as well as any other decisions recently issued, into account in rendering its determination herein.

We additionally note, however, that Applicant, for the first time in its supplemental briefing, seeks judgment in its favor based on the "prior registration" or *Morehouse* defense. Applicant, however, did not plead this defense in either of its answers. A party may not obtain summary judgment on an unpleaded claim or defense. *Bausch & Lomb Inc. v. Karl Storz GmbH & Co. KG*, 87 USPQ2d 1526, 1528 n.3 (TTAB 2008); *see also* TBMP § 528.07(a) (2015). Accordingly, the Board has given no consideration to Applicant's "prior registration" or *Morehouse* defense. Should Applicant wish to pursue this defense at trial, amendment of the answers is necessary.

1.     for "jewelry" in International Class 14 (subject to Opposition No. 91197504 and hereinafter referred to as "Crest Mark");[3] and

2. **ΑΦΩ** for "headwear; jackets; shirts; sweatshirts" in International Class 25 (subject to Opposition No. 91197505).[4]

Opposer has opposed each of these applications on two grounds: (1) likelihood of confusion under Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d); and (2) likelihood of dilution by blurring under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). In support of its asserted claims, Opposer pleads, among other things, ownership of registrations consisting of the term OMEGA in stylized form or the Omega letter of the Greek alphabet with the word "OMEGA," including the marks listed below, used in association with various goods and services, including, *inter alia*, watches, clothing, namely, scarves and neckties, automatic recording machines and apparatus for use in determining the results of sporting events, and retail store services featuring watches and jewelry:

---

[3] Application Serial No. 77950436, filed on March 4, 2010, based on an allegation of use in commerce under Section 1(a) of the Lanham Act, 15 U.S.C. § 1051(a), claiming 1930 as both the date of first use and the date of first use in commerce. The application includes the following description of the mark: "The mark consists of a coat-of-arms design containing a shield bearing three torches, three trefoils, a sword and a smaller shield containing a cross and drops. Atop the larger shield is a helmet with rays and stars emanating from it and below the larger shield is a ribbon bearing the words 'ALPHA PHI OMEGA'."

[4] Application Serial No. 77905236, filed on January 5, 2010, based on an allegation of use in commerce under Section 1(a) of the Lanham Act, 15 U.S.C. § 1051(a), claiming 1980 as both the date of first use and the date of first use in commerce.





## II. Pleading Issues

We initially note that Opposer failed to plead properly its asserted dilution claim in each of its notices of opposition since the pleadings are devoid of any allegations regarding the date when Opposer's pleaded marks allegedly became famous. *See Polaris Industries Inc. v. DC Comics*, 59 USPQ2d 1798, 1800 (TTAB 2000) ("…opposer's allegation of dilution is legally insufficient inasmuch as there is no allegation as to when opposer's mark became famous."). *See also* 15 U.S.C. § 1125(c). Because Applicant's involved applications are based on allegations of use in commerce under Section 1(a) of the Lanham Act, Opposer must plead, for any mark serving as support for its dilution claim, that such mark(s) became famous for dilution

---

[5] Registration No. 25036.

[6] Registration No. 566370.

[7] Registration No. 577415.

[8] Registration Nos. 578041, 660541, 1290661, 1969071, 3146117, and 3318408.

[9] Registration No. 2912918.

purposes prior to Applicant's first use of its applied-for marks in commerce. *Toro Co. v. ToroHead Inc.,* 61 USPQ2d 1164, 1174 n.9 (TTAB 2001).[10]

Ordinarily, a party may not obtain summary judgment on an issue that it has not pleaded or properly pleaded. *See* Fed. R. Civ. P. 56(a); *Asian and Western Classics B.V. v. Lynne Selkow*, 92 USPQ2d 1478, 1480 (TTAB 2009). However, because Applicant, not Opposer, is the moving party, and because Applicant clearly has grounds for a Motion to Dismiss Opposer's dilution claim under Fed. R. Civ. P. 12(b)(6), in the interest of efficiency, we consider Applicant's request for summary judgment on the dilution claim. There is no prejudice to Opposer in our doing so, as it has briefed the question whether Applicant is entitled to summary judgment on its claim of dilution. As explained further below, because we grant Applicant summary judgment only in part, Opposer will be allowed time to properly plead its asserted dilution claim, failing which the claim will be dismissed.

## III. Analysis[11]

### A. Summary Judgment Standard

Under Fed R. Civ. P. 56, made applicable to Board proceedings by Trademark Rule 2.116(a), 37 C.F.R. § 2.116(a), a party moving for summary judgment has the burden

---

[10] As discussed in more detail *infra*, the standard for pleading dilution in an opposition proceeding against an application under Section 1(b) of the Trademark Act or "intent-to-use" is different. Where an intent-to-use application is the subject of an opposition, the opposer must plead that its mark became famous prior to the filing date (i.e., date of constructive use) of the opposed intent-to-use application. *Toro Co.*, 61 USPQ2d at 1174; *see also National Pork Board v. Supreme Lobster and Seafood Co.*, 96 USPQ2d 1479, 1494-95 (TTAB 2010).

[11] For purposes of this order, we presume the parties' familiarity with the pleadings, the history of the proceedings and the arguments and evidence submitted with respect to Applicant's motion for summary judgment.

of demonstrating the absence of any genuine dispute as to a material fact, and that it is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Sweats Fashions, Inc. v. Pannill Knitting Co. Inc.*, 833 F.2d 1560, 4 USPQ2d 1793, 1796 (Fed. Cir. 1987). A factual dispute is genuine if, on the evidence of record, a reasonable fact finder could resolve the matter in favor of the non-moving party. *See Opryland USA Inc. v. Great American Music Show Inc.*, 970 F.2d 847, 23 USPQ2d 1471, 1472 (Fed. Cir. 1992); *Olde Tyme Foods, Inc. v. Roundy's, Inc.*, 961 F.2d 200, 22 USPQ2d 1542, 1544 (Fed. Cir. 1992). Additionally, the evidence of record and all justifiable inferences that may be drawn from the undisputed facts must be viewed in the light most favorable to the non-moving party. *See Lloyd's Food Products Inc. v. Eli's Inc.*, 987 F.2d 766, 25 USPQ2d 2027, 2029 (Fed. Cir. 1993); *Opryland USA,* 23 USPQ2d at 1472.

### B. Likelihood of Confusion

The Board first turns to Applicant's motion for summary judgment as it pertains to Opposer's claim of likelihood of confusion. In determining whether there is any genuine dispute of material fact relating to the legal question of likelihood of confusion, the Board must consider all of the probative facts in evidence which are relevant to the factors bearing on likelihood of confusion, as identified in *In re E.I du Pont de Nemours & Co.,* 476 F.2d 1357, 177 USPQ 563 (CCPA 1973) ("*du Pont*").

As noted in the *du Pont* decision itself, various factors, from case to case, may play a dominant role. *In re E.I du Pont,* 177 USPQ at 567. Further, a single *du Pont* factor

may be dispositive in any particular case. *Kellogg Co. v. Pack'em Enterprises Inc.*, 951 F.2d 330, 21 USPQ2d 1142 (Fed. Cir. 1991) (marks dissimilar).

For the reasons set forth below, we find that Applicant has satisfied its burden of establishing the absence of any genuine dispute of material fact with regard to the dissimilarity of Opposer's pleaded OMEGA marks and Applicant's Crest Mark, and that Applicant therefore is entitled to judgment as a matter of law dismissing the likelihood of confusion claim under Section 2(d) with regard to its Crest Mark.

Based upon the factual circumstances presented in this case, we find *Kellogg Co. v. Pack'em, supra*, to be instructive. In *Kellogg,* the Court of Appeals for the Federal Circuit affirmed the Board's determination that even considering all other relevant *du Pont* factors in opposer's favor, the single *du Pont* factor of the dissimilarity of the marks at issue in that case outweighed the other relevant *du Pont* factors, and was therefore dispositive on the issue of likelihood of confusion.

Similarly here, even considering all other relevant *du Pont* factors in Opposer's favor, we find that Applicant's Crest Mark is so dissimilar to Opposer's pleaded OMEGA marks that no likelihood of confusion can exist as a matter of law. *See Champagne Louis Roederer S.A. v. Delicato Vineyards,* 148 F.3d 1373, 47 USPQ2d 1459, 1460 (Fed. Cir. 1998) ("one *du Pont* factor may be dispositive in a likelihood of confusion analysis, especially when that single factor is the dissimilarity of the marks").

Specifically, we find that no genuine dispute of material fact exists that Applicant's Crest Mark, displayed below, is dissimilar in appearance, connotation and commercial impression from each of Opposer's pleaded OMEGA marks.



Applicant's Crest Mark consists of a prominent, ornate and highly distinctive design. Although the words "Alpha Phi Omega" appear in the mark, they play a relatively minor role in the overall commercial impression of the mark, appearing in small typeface on a ribbon defining the base of the crest, and as a consequence the design elements constitute the dominant element of the mark. *See Ferro Corp. v. Ronco Labs, Inc.,* 356 F.2d 122, 148 USPQ 497, 498-99 (CCPA 1966) (confusion was unlikely between applicant's mark and several marks owned by opposer even though all consisted of or contained FERRO, due to the dominance of the design elements of applicant's mark and the relatively small typeface in which FERRO appeared in applicant's mark); *accord Parfums de Coeur Ltd v. Lazarus*, 83 USPQ2d 1012 (TTAB 2007) (prominently displayed design considered to be dominant element of the mark).

Although Applicant's Crest Mark does include the term OMEGA, the similarity with Opposer's pleaded OMEGA marks ends there. As noted above, that single shared

word is located at the very bottom of Applicant's ornate Crest Mark, where it follows the terms ALPHA PHI. Persons viewing Applicant's Crest Mark would tend to view it as a whole, and would have no reason to parse it into its elements, focusing only on the OMEGA element. *See China Healthways Institute, Inc. v. Wang*, 491 F.3d 1337, 83 USPQ2d 1123, 1125 (Fed. Cir. 2007) ("It is incorrect to compare marks by eliminating portions thereof and then simply comparing the residue."). "It is axiomatic that a mark should not be dissected and considered piecemeal; rather, it must be considered as a whole in determining likelihood of confusion." *Juice Generation, Inc. v. GS Enterprises LLC*, 794 F.3d 1334, 115 USPQ2d 1671, 1676 (Fed. Cir. 2015) (quoting *Franklin Mint Corp. v. Master Mfg. Co.*, 667 F.2d 1005, 212 USPQ 233, 234 (CCPA 1981)).

In view of the foregoing, Applicant's motion for summary judgment on Opposer's likelihood of confusion claim as it pertains to Applicant's Crest Mark is granted.

With regard to Applicant's **ΑΦΩ** mark, however, we find that, at a minimum, genuine disputes of material fact exist as to the similarities of the parties' respective marks, as well as the relatedness of the parties' respective goods. Accordingly, Applicant's motion for summary judgment on Opposer's likelihood of confusion claim as it concerns Applicant's **ΑΦΩ** mark is denied.

**C. Dilution**

The Board next turns to Applicant's motion for summary judgment as it pertains to Opposer's asserted claim of dilution by blurring. Before entertaining the merits of this portion of Applicant's motion, we address an argument advanced by Opposer in

response to the motion. Opposer contends that in order to prevail on its dilution claim, Opposer need only establish that its pleaded OMEGA marks became famous prior to the *filing date* of Applicant's involved applications, notwithstanding the fact that both of Applicant's involved applications were filed as use-based applications under Section 1(a) of the Trademark Act and which allege dates of first use in commerce prior to the filing dates of the applications. In support of this contention, Opposer relies on our reviewing court's decision in *Coach Services Inc. v. Triumph Learning LLC,* 668 F.3d 1356, 101 USPQ2d 1713 (Fed. Cir. 2012). Specifically, Opposer maintains that the Federal Circuit in *Coach Services* clearly ruled that an owner of an allegedly famous mark must show that its mark became famous prior to the filing date of the trademark application, regardless of whether the application at issue is based on use in commerce or instead is based on a *bona fide* intent to use the mark in commerce. Opposer bases this argument on the fact that even though the Federal Circuit's decision in *Coach Services* involved use-based applications, it cited our decision in *Toro Co. v. ToroHead Inc.,* 61 USPQ2d 1164 (TTAB 2001) which concerned intent-to-use applications. Opposer apparently believes the *Coach Services* decision reflected a conscious decision by the Federal Circuit to broaden application of the *Toro* rationale to use-based applications. Opposer is mistaken for the reasons set forth below.

In *Toro*, the Board held that "in the case of an intent-to-use application, an owner of an allegedly famous mark must establish that its mark had become famous prior to the filing date of the trademark application…." *Toro*, 61 USPQ2d at 1174. For

10

purposes of its analysis in *Toro*, the Board specifically noted that it assumed that the intent-to-use applicant had not actually used the mark in commerce. *Id.* at 1174 n.8. Based upon this assumption, the Board found that when a party asserts a dilution claim against an intent-to-use application filed under Section 1(b) of the Trademark Act, the pertinent date for scrutinizing the fame of Opposer's pleaded mark is the filing date of the opposed intent-to-use application. *Id.* at 1175. The Board, however, distinguished the pertinent date for scrutinizing the fame of an opposer's mark when the subject application is based on use in commerce under Section 1(a) of the Trademark Act. The Board noted that "[i]n a use-based application under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), the party alleging fame must show that the mark had become famous prior to the applicant's use of the mark." *Id.* at 1174 n.9.[12]

Opposer's contention that in *Coach Services* the Federal Circuit overruled this distinction as set forth in *Toro* constitutes a misreading of both cases. *Coach Services* involved an opposition proceeding against a "use-based" application filed under Section 1(a) of the Trademark Act. At the outset of the discussion, the Federal Circuit set forth the standard for a claim of dilution. It set forth four required elements: proof that: "(1) [the plaintiff] owns a famous mark that is distinctive; (2) the defendant is *using* a mark in commerce that allegedly dilutes the plaintiff's famous mark; (3) the

---

[12] While the *Toro* decision was decided under the 1999 amendments to the Federal Trademark Dilution Act and prior to the enactment of the Trademark Dilution Revision Act of 2006, we note that the Trademark Dilution Revision Act of 2006 does not run counter to the reasoning in the *Toro* decision on this point. *New York Yankees Partnership v. IET Products and Services, Inc.*, 114 USPQ2d 1497, 1505 (TTAB 2015).

defendant's *use* of its mark began after the plaintiff's mark became famous; and (4) the defendant's *use* of its mark is likely to cause dilution by blurring or by tarnishment." *Coach Services*, 101 USPQ2d at 1723-24 (emphasis added). While the Federal Circuit in *Coach Services* later quoted language from *Toro* regarding the date before which an opposer must be able to establish fame in proceedings involving intent-to-use applications, it did not do so to change the dilution standard, but did so within the context of comparing the standards for showing fame for dilution purposes vis-a-vis likelihood of confusion. To the extent that Opposer maintains that, by quoting the *Toro* excerpt relating to intent-to-use applications, the Federal Circuit implicitly held that, to show fame for dilution purposes, the proponent must prove only that its mark was famous prior to the *filing date* of the subject application regardless of the basis of the application, it is clear from the full context of its opinion that the Federal Circuit did not do so. Indeed, if the Board were to adopt Opposer's interpretation of *Coach Services*, we would abrogate the legislative requirement under the Trademark Dilution Revision Act—on which the Federal Circuit based it exposition of the four required elements of a dilution claim—that a plaintiff must prove that its mark acquired fame prior to the defendant's use of its involved mark in commerce when such use has been demonstrated and such use predates the filing date of the involved application.

Accordingly, we reject Opposer's misreading of *Coach Services* and adhere to our prior (and *Coach Services*') holding that, in order for Opposer to prevail on its asserted dilution claim, it must establish that any of its pleaded OMEGA marks became

famous prior to Applicant's first use in commerce of the marks in its involved use-based applications. However, in the event that Applicant fails to establish when it first used its applied-for marks in commerce, Opposer will need only to prove fame prior to Applicant's constructive use date of its involved marks, i.e., the filing date of its involved applications. *See Chanel, Inc. v. Makarczyk,* 110 USPQ2d 2013, 2024 (TTAB 2014) (where record contains no evidence of applicant's use, it is the filing date, *i.e.,* the constructive use date, that controls even though application based on Section 1(a): "In this case, because we have no evidence of applicant's use we must determine if opposer's mark became famous prior to the filing date of the trademark application or registration against which it intends to file an opposition or cancellation proceeding.").

We next turn to the issue on which the Board required further briefing from the parties:

> Whether a plaintiff, in order to prove a dilution claim under the Trademark Act in a Board proceeding where defendant's application/registration is based on use in commerce, must establish that its mark became famous prior to the defendant's use of its subject mark in commerce as to any goods or services or whether plaintiff must establish that its mark became famous prior to defendant's use of its subject mark in commerce in connection with the goods and/or services specifically identified in defendant's subject application or registration.[13]

After careful consideration of the parties' supplemental briefing and the Board's own evaluation of the issue, the Board finds that, in order to prevail on a dilution by blurring claim in a Board *inter partes* proceeding, a plaintiff must establish that its mark became famous prior to **any established, continuous use** of the defendant's

---

[13] *See* Opposition No. 91197504, 85 TTABVUE at p. 2.

involved mark as a trademark or trade name, and not merely prior to use in association with the specific identified goods or services set forth in a defendant's subject application or registration.

The Trademark Dilution Revision Act of 2006 ("TDRA") amended Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). It provides that:

> the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, **commences use of a mark or trade name in commerce**[14] that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1) (emphasis added).

We initially note that this statutory language does not limit use of a mark to any specific goods or services, as compared to other sections of the Lanham Act. For example, the counterfeit provisions of the Lanham Act define the word "mark" to mean use of the mark in relation to specific goods and services. 15 U.S.C. § 1116(d)(1)(B) ("As used in this subsection the term "counterfeit mark" means – (i) a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered."). Accordingly, Congress has shown that it will limit the use of the word "mark" to something narrower than simply the mark itself,

---

[14] Commerce is defined by the Lanham Act as "all commerce which may lawfully be regulated by Congress," which includes interstate commerce or commerce between the United States and a foreign country. Section 45 of the Lanham Act, 15 U.S.C. § 1127.

14

when it has a reason to. Had Congress intended to limit the pertinent use of the word "mark" under Section 43(c) to a different date of first use as to each differing use made of the mark, Congress could have done so.[15]

We acknowledge Opposer's argument that a plaintiff alleging dilution by blurring need only prove the fame of its mark vested prior to the use by an applicant or registrant of its mark for the specific goods or services involved in its application or registration. We disagree. Unlike the Board's analysis of various other claims brought against an application or registration, which may necessarily focus closely on the nature of a defendant's use of a mark for particular goods or services, the core inquiry the Board must undertake in considering a claim of dilution by blurring is not centered upon defendant's use of its involved mark on the goods or services identified in the defendant's involved application or registration. Instead, the focus is on whether any use by defendant of its involved mark has reduced the ability of the plaintiff's mark to serve as a *unique* identifier of the plaintiff's products and services.[16] Indeed, none of the six factors enumerated in Section 43(c)(2)(B) of the

---

[15] It is also important to note that Section 43(c) provides that it is the burden of the dilution claimant to prove fame which predates the commencement of "use of a mark **or trade name** in commerce." In view thereof, we find that it would be incongruous to allow a dilution claimant to challenge a defendant's mark in a Board proceeding if that mark has been continuously used by the defendant as a trade name prior to its use as a trademark/service mark if the claimant's mark did not acquire fame prior to the adoption of the trade name itself.

[16] Nor does the primary focus of the Board's jurisdiction on registrability, rather than use, dictate that use of a term, independent of any attempt to register the term, may not be considered by the Board. Uses of a term or design by third parties can be, and must be, considered when questions related to genericness or functionality are at issue, for example; and uses by a party other than as a mark but as a trade name certainly bear on priority determinations.

Lanham Act which the Board must consider in determining whether a mark is likely to cause dilution by blurring concern an evaluation of a defendant's use of its mark in association with the goods or services identified in its subject application or registration.

The case law, including a decision by our reviewing court, is consistent with our statutory construction that a plaintiff, for purposes of proving dilution by blurring under the TDRA, must establish that its mark acquired fame prior to any use of the defendant's mark in commerce. In *Network Network v. CBS, Inc.*, 54 USPQ2d 1150 (C.D. Cal. 2000), the mark TNN was first used for television programming in 1989 and, in 1994, the mark evolved to TNN.COM for a website. Subsequently, the mark holder sought a declaratory judgment that, *inter alia*, its mark did not dilute another's TNN mark and asserted that fame of the other's mark would need to be proven as of 1989. The court agreed that the statute requires the mark claimed to be famous to have acquired such fame by the time of the other user's first commercial use, not when some later evolved use occurs that the dilution claimant finds objectionable. *Id*. at 1153.

The Ninth Circuit in *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 72 USPQ2d 1078 (9th Cir. 2004), agreed with this assessment. In *Nissan Motor Co.*, the owner of a computer and Internet company began using his surname, Nissan, as the trade name for his business and then years later registered "nissan.com" as a domain name for his website. The Ninth Circuit held that "any commercial use of a famous mark in commerce is arguably a diluting use that fixes the time by which

famousness is to be measured." 72 USPQ2d at 1084. Thus, the Court held that the requisite date of fame relates to the date "Nissan" was used for computers by Nissan Computer Corp., not when nissan.com was registered.

The Federal Circuit also agreed with this approach. In *Enterprise Rent–A–Car Co. v. Advantage Rent–A–Car, Inc.,* 330 F.3d 1333, 66 USPQ2d 1811 (Fed. Cir. 2003), Enterprise challenged Advantage's use of the phrase "We'll Even Pick You Up" in television commercials broadcast in San Antonio, Texas between 1992 and 1995 as diluting its own phrases "Pick the Company that Picks You Up" and "Pick Enterprise, We'll Pick You Up," which Enterprise began using in 1994. Enterprise contended that prior use by Advantage in a limited geographic area did not bar its claim of dilution. The court recognized that the term "such use" in Section 1125(c) "could refer to any use by the defendant in commerce," or "could refer to the particular use being challenged in the litigation." 66 USPQ2d at 1818. It held that the latter was "not a tenable reading of the statute," and that "the statute's reference to 'such use' must refer to ***any use*** in commerce." *Id.* (emphasis added). The court concluded that "[b]ecause there can be no dilution … where the allegedly famous mark did not achieve fame prior to any use by the accused infringer, there can be no opposition based on dilution under such circumstances.[17] *Id.* at 1819.

---

[17] The decisions in *Network Network, Nissan Motor Co.,* and *Enterprise Rent-A-Car Co.* were issued pursuant to the provisions of the 1996 Federal Trademark Dilution Act ("FTDA"), as amended. The FTDA provided, in relevant part, that, "[t]he owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, *if such use begins after the mark has become famous* and causes dilution of the distinctive quality of the mark…." (emphasis added). The language of the timing requirement changed with the enactment of the Trademark Dilution Revision Act of 2006

The Fourth Circuit similarly followed this approach in *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 102 USPQ2d 1473 (4th Cir. 2012). When Rosetta Stone sued Google for diluting its mark by using it as a keyword to trigger advertising, the Fourth Circuit held that the key date for determining whether the ROSETTA STONE trademark was "famous" was in 2004, when Google's first use of the keyword ROSETTA STONE began. 102 USPQ2d at 1494. The Court noted that the statute does not permit the owner of a famous mark to pick and choose which diluting use counts for purposes of Section 1125(c)(1). *Id.*

Accordingly, we conclude that in order to prevail on its dilution by blurring claim, Opposer must establish that its pleaded OMEGA marks that serve as a basis for its dilution by blurring claim became famous prior to ***any established, continuous use*** of Applicant's involved marks, whether as a trademark or trade name, and not just prior to Applicant's use in commerce of its involved marks in connection with the goods identified in Applicant's involved applications.

We now turn to the merits of Applicant's motion for summary judgment as it pertains to Opposer's dilution by blurring claim. To prevail on a dilution claim under the TDRA, a plaintiff must show that: (1) it owns a famous mark that is distinctive; (2) the defendant is using a mark in commerce that allegedly dilutes the plaintiff's

---

("TDRA") which references the time when defendant "*commences use of a mark or trade name in commerce.*" We find that there is no significant difference between "use begins" and "commences use" so that the timing of the required acquisition of fame would be altered. Therefore, the case law under the FTDA on this point should remain precedential under the TDRA. *See* 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 24:103 (4th ed. 2015) ("[i]n the author's view, there is no significant difference between the 1996 [FTDA version] wording of 'begins' and the 2006 [TDRA version] 'commences.'").

famous mark; (3) the defendant's use of its mark began after the plaintiff's mark became famous; and (4) the defendant's use of its mark is likely to cause dilution by blurring or by tarnishment. Section 43(c)(1) of the Lanham Act, 15 U.S.C. § 1125(c)(1). Furthermore, in determining whether a mark is likely to cause dilution by blurring, we consider all factors relevant to the issue, including the following six factors that are enumerated in Section 43(c)(2)(B) of the Lanham Act:

(i)     The degree of similarity between the mark or trade name and the famous mark;

(ii)    The degree of inherent or acquired distinctiveness of the famous mark;

(iii)   The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark;

(iv)    The degree of recognition of the famous mark;

(v)     Whether the user of the mark or trade name intended to create an association with the famous mark; and

(vi)    Any actual association between the mark or trade name and the famous mark.

15 U.S.C. § 1125(c)(B)(i)-(vi).

In weighing evidence produced at trial, some of these statutory dilution factors may be given more weight than others, depending on the evidence of record. *Citigroup Inc. v. Capital City Bank Group, Inc.,* 94 USPQ2d 1645, 1667 (TTAB 2010). On Applicant's motion for summary judgment we consider whether the record shows no

genuine dispute that Opposer cannot prove the four factors of Section 43(c)(1). *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

We first address Applicant's Crest Mark in conjunction with Opposer's asserted dilution claim. Even if we were to assume *arguendo* that Opposer's pleaded OMEGA marks were famous for purposes of protection against dilution under Section 43(c) of the Lanham Act, and became famous before any alleged date of use in commerce by Applicant (or in the absence of direct evidence of use, the application filing date of Applicant's Crest Mark application), we find that there is no genuine dispute of material fact that Applicant's Crest Mark is not likely to dilute Opposer's marks by blurring. "Dilution by blurring" is defined as an "association arising from the similarity between a mark … and a famous mark that impairs the distinctiveness of the famous mark." *Coach Servs., Inc.*, 101 USPQ2d at 1724; *ProMark Brands Inc. v. GFA Brands, Inc.,* 114 USPQ2d 1232, 1250 (TTAB 2015). Blurring may occur regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury. *Chanel,* 110 USPQ2d at 2018. Dilution by blurring occurs when "a substantial percentage of consumers, on seeing the junior party's use of a mark on its goods, are immediately reminded of the famous mark and associate the junior party's use with the owner of the famous mark, even if they do not believe that the goods come from the famous mark's owner." *N.Y. Yankees Partnership Inc.,* 114 USPQ2d at 1506.

Here, even if we were to further assume *arguendo* that factors (ii) through (iv) as set forth in Section 43(c)(2)(B) of the Lanham Act favor Opposer—i.e., that its

OMEGA marks are highly distinctive, that it has engaged in substantially exclusive use of its OMEGA marks, and that the OMEGA marks enjoy a high degree of recognition—we nonetheless find that there are no genuine disputes of material fact as to factors (i), (v), and (vi), which we find are entitled to greater weight in this particular case: the lack of similarity of the marks at issue, intent, and association.

> (i)     *The degree of similarity between the Applicant's Crest Mark and Opposer's OMEGA marks.*

In considering this dilution factor, the Board has explained that:

> While we are not conducting a Section 2(d) likelihood of confusion analysis under this factor for dilution by blurring, we still consider the degree of similarity or dissimilarity of the marks in their entireties as to appearance, connotation, and commercial impression. We consider the marks in terms of whether they are sufficiently similar in their overall commercial impressions that the required association exists.

*N.Y. Yankees Partnership,* 114 USPQ2d at 1506 (citations omitted). *See also* 15 U.S.C. § 1125(c)(2)(B).

There is no genuine dispute of material fact that Applicant's Crest Mark is strikingly dissimilar from Opposer's pleaded OMEGA marks. It is design-dominant, with a distinctly different appearance:



21

The term OMEGA is only found within the banner at the bottom of Applicant's Crest Mark following the terms ALPHA and PHI. The word "OMEGA," however, is no more prominent than the words ALPHA or PHI; and Opposer has adduced no evidence that a substantial percentage of consumers would focus on the "Omega" element alone, and thereby associate the mark with Opposer. The marks are thoroughly dissimilar.

*(v) Whether Applicant intended to create an association with the famous mark.*

There is no evidence of record that Applicant intended to create an association with Opposer's pleaded OMEGA marks. Where, as here, Applicant, as the moving party, has supported its motion by demonstrating the lack of any evidence that it intended to create an association with Opposer's pleaded OMEGA marks, the burden then shifts to Opposer to demonstrate the existence of a genuine dispute of material fact to be resolved at trial. *The Clorox Co. v. Salazar,* 108 USPQ2d 1083, 1085 (TTAB 2013); *Enbridge, Inc. v. Excelerate Energy LP*, 92 USPQ2d 1537, 1540 (TTAB 2009). Opposer may not rest on its pleadings and assertions, but must produce evidence showing the existence of a genuine dispute as to a material fact for trial. *See Hornblower & Weeks Inc. v. Hornblower & Weeks Inc.*, 60 USPQ2d 1733, 1739 (TTAB 2001) ("applicant has produced no evidence, or raised any expectation that at trial it could produce evidence.") (citing *Kellogg v. Pack'Em*, 14 USPQ2d at 1550 (summary judgment granted in favor of applicant because opposer, in responding to motion, did not set out any evidence that it could produce at trial which could reasonably be

expected to cause the Board to come to a different conclusion)), *aff'd,* 951 F.2d 330, 21 USPQ2d 1142 (Fed. Cir. 1991).

Opposer was afforded the opportunity to conduct discovery relating to Applicant's subject motion, yet it proffers no evidence whatsoever in response to Applicant's motion for summary judgment that raises any genuine dispute of material fact as to the issue of intent on Applicant's part to use the Crest Mark to indicate an association with Opposer.

*(vi) Any actual association between Applicant's Crest Mark and Opposer's OMEGA marks.*

The record is also devoid of any evidence of actual association between Applicant's Crest Mark and Opposer's OMEGA marks. *See Citigroup,* 94 USPQ2d at 1668 ("Since we have no evidence on which to conclude that potential customers of applicant's services would make any association between the parties' marks when used in connection with their respective services, this dilution factor favors applicant.").

Here, we find that there are no genuine disputes of material fact that (1) Opposer's pleaded OMEGA marks are not sufficiently similar to Applicant's Crest Mark so that consumers will conjure an association with Opposer's OMEGA marks when confronted with Applicant's Crest Mark; (2) Applicant did not intend to create an association with Opposer's pleaded OMEGA marks; and (3) no actual association between Applicant's Crest Mark and Opposer's pleaded OMEGA marks exists. Accordingly, we find that, as a matter of law, Applicant's Crest Mark will not impair any assumed distinctiveness of Opposer's assumedly famous OMEGA marks. *See Chanel,* 110 USPQ2d at 2024 (citing *Nike Inc. v. Maher,* 100 USPQ2d 1018, 1023

(TTAB 2011) (dilution requires a conclusion "not only whether there is an 'association' arising from the similarity of the marks, but whether such association is likely to 'impair' the distinctiveness of the famous mark.")).

In view thereof, Applicant's motion for summary judgment is granted with regard to Opposer's dilution claim as it pertains to Applicant's Crest Mark.

With regard to Applicant's **AΦΩ** mark, however, we find that, at a minimum, genuine disputes of material fact exist as to (1) whether Applicant's **AΦΩ** mark is sufficiently similar to Opposer's pleaded OMEGA marks so that when relevant consumers are confronted with Applicant's **AΦΩ** mark the mark conjures up an association with Opposer's pleaded OMEGA marks, and (2) when Applicant first used its **AΦΩ** mark in interstate commerce, whether as a trade name for its fraternal organization or as a trademark for any goods.[18]

Accordingly, Applicant's motion for summary judgment on Opposer's dilution claim, as it pertains to Applicant's **AΦΩ** mark, is denied.

### D. Conclusion

---

[18] Although Applicant's Fed. R. Civ. P. 30(b)(6) deponent, Robert London, testified during his discovery deposition that Applicant adopted its **AΦΩ** mark in 1925, *see* London Dep. 14:10-12 attached as Exhibit 13 to Opposer's response to Applicant's motion for summary judgment, Mr. London did not affirmatively testify when the **AΦΩ** mark was first used as a trade name or in interstate commerce. We further note that Applicant submitted additional evidence with its reply brief which purportedly demonstrates use of Applicant's **AΦΩ** mark on clothing items. This evidence is untimely submitted and has been given no consideration. Opposer did not have the opportunity to address this evidence in its response to Applicant's motion for summary judgment. If Applicant wanted the Board to consider this evidence, Applicant should have submitted it with Applicant's original motion for summary judgment. *Cf.* Trademark Rule 2.142(d); 37 C.F.R. § 2.142(d).

Applicant's motion for summary judgment on Opposer's asserted claims of likelihood of confusion under Lanham Act Section 2(d) and dilution by blurring under Lanham Act Section 43(c) as they pertain to Applicant's Crest Mark subject to Opposition No. 91197504 is granted; judgment is entered in Applicant's favor as to Opposition No. 91197504; and therefore Opposition No. 91197504 is dismissed.

Applicant's motion for summary judgment is denied with regard to Opposer's asserted claims of likelihood of confusion and dilution as they relate to Applicant's **ΑΦΩ** mark in Opposition No. 91197505. [19]

## IV.    Further Proceedings

"Where a final disposition has been entered as to some, but not all, of the cases in a consolidated proceeding, the remaining cases will no longer be considered consolidated with the case for which a final disposition has been entered." TBMP § 511 (2015). Since we have entered a final disposition with regard to Opposition No. 91197504, that proceeding will no longer be considered consolidated with Opposition No. 91197505. Opposition No. 91197505 will proceed as a single case pursuant to the trial schedule set forth below. In view thereof, the parties should now make all filings pertaining to Opposition No. 91197505 in that case file.

Opposer's insufficiently pleaded dilution claim in Opposition No. 91197505 is stricken. Fed. R. Civ. P. 12(f). Opposer is allowed until **TWENTY (20) DAYS** from the mailing date of this order to file and serve an amended notice of opposition in

---

[19] The fact that we have identified genuine disputes of material fact sufficient to deny Applicant's motion for summary judgment in Opposition No. 91197505 should not be construed as a finding that these are necessarily the only disputes which remain for trial.

Opposition No. 91197505 which properly pleads a claim of dilution pursuant to the guidelines set forth in this order, failing which Opposition No. 91197505 will move forward solely on Opposer's likelihood of confusion claim. In the event Opposer files and serves an amended notice of opposition in accordance with this order, Applicant is allowed until **TWENTY (20) DAYS** from the date indicated on the certificate of service of Opposer's amended pleading in which to file and serve its answer to Opposer's amended notice of opposition.

Opposition No. 91197505 otherwise remains suspended until the issues are joined in accordance with this order. At that time, another scheduling order shall issue, resetting remaining trial dates. Notwithstanding the foregoing, the parties are precluded from filing any further motions for summary judgment in Opposition No. 91197505.