56 CCPA

### Application of YAWATA IRON & STEEL CO., Ltd.

### Patent Appeal No. 8021.

United States Court of Customs and Patent Appeals.

Dec. 5, 1968.

---

---

Wenderoth, Lind & Ponack, Washington, D. C. (Ernest F. Wenderoth, Vincent M. Creedon, Washington, D. C., of counsel), for appellant.

Joseph Schimmel, Washington, D. C. (George Roeming, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH, ALMOND and BALDWIN, Judges.

ALMOND, Judge.

Yawata Iron & Steel Co., Ltd., appeals from the decision of the Trademark Trial and Appeal Board [1] refusing registration of the mark shown in appellant's application [2] for iron, namely pig iron, sponge iron, cast iron, and ferro alloy; steel, namely ordinary steel and special steel; semi-finished steel, namely blooms, billets, slabs, sheet bars and tin bars; and finished steel products, namely rails and accessories, bars and shapes, sheet piling, wire products, wire rods, plates, sheets, high tensile strength steels, hot extruded steels, stainless steels, and clad steels. Ownership of a Japanese regis-

1. Board opinion abstracted, 150 USPQ 833.

2. Serial No. 188,404 filed March 10, 1964.

tration is asserted. The mark described in the application and for which registration is sought on the Principal Register is reproduced below:

Refusal of registration was predicated on the ground that appellant's mark so resembles the design mark comprising the letter "S" within a circle (shown below) previously registered for carbon steel, alloy steel, semi-steel, and malleable and grey iron castings [3] as to be likely when applied to appellant's goods, to cause confusion or mistake or deception.

There is no issue here as to priority of use or as to the identity of the competing goods of the respective parties. The sole issue is likelihood of confusion within the purview of section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d).

Appellant has cited numerous third-party registrations of marks with the letter "S" as a dominant characteristic surrounded by a design and used in conjunction with metal products. Appellant contends that insamuch as these marks were permitted registration "one over the other," appellant's mark should also be allowed over the registration cited by the board. Appellant's reliance on third-party registrations of somewhat similar marks is, as the board said, not conclusive on the issue here involved. Those registrations, as appellant admits, are distinguished one from the other. The most they can establish is that the use of the letter "S" as a mark or part of a mark is not particularly distinctive in the metal field. This does not answer the question of likelihood of confusion, mistake or deception.

After comment on the third-party registrations, the board stated:

> In the final analysis, we must look at the marks to determine whether there does in fact exist such similarity therebetween as would be likely to cause confusion or mistake or deception. * * *
>
> There are of course differences between the marks but when the marks are applied to the goods, these differences are apparently minimized. As cast on pig iron, the distinctive points of applicant's mark are not readily discernible and as stenciled on packages of hot strip coil * * * the impression of applicant's mark is of an "S" within a circle. As we view the marks, as illustrated above, the impact of each is substantially identical—an "S" within a circle.
>
> We conclude that in view of the substantial similarities between the marks and in view of the identity of the involved goods, confusion or mistake or deception is likely.

3. Registration No. 397,914 issued September 29, 1942.

Appellant argues that inasmuch as the goods involved are not "over the counter" wares and are bought only by discriminating purchasers, likelihood of confusion is thereby minimized. Here, as noted we have legally identical goods, hence the same class of purchasers, and marks which are quite similar in their essential features, as well as the fact that the goods as identified in the application are not restricted to any particular channel of distrbution.

We are not persuaded of error in the decision of the board, which decision is accordingly affirmed.

Affirmed.

SMITH, Judge, participated in the hearing of this case but died before a decision was reached.

WORLEY, Chief Judge (dissenting).

I daresay that if this court had not had the benefit of the record, brief and argument no member would say that appellant's mark remotely resembles an "S" in the usual sense. To me it is but an arbitrary symbol which has no sound, spelling or meaning. It is, as appellant states:

> * * * a circular design having four outwardly extending points, spaced 90° apart at top, at the bottom, at the right and at the left. In the center of the circular device is a dot or disc. Above the central dot, in Appellant's mark, there is a flattened arc extending upwardly to the right while below the dot or disc, at the center, and all inside of the circular device, there is another arc extending downwardly and to the left. *Neither of the arcs is joined to the central dot or disc nor is either arc joined in any manner to the outer circular device.*

I cannot believe that any of us, seeing the marks as actually used in the world of commerce, would be likely to assume the goods to which the marks are applied emanated from a common source. This member of the court was obliged to stare intently at appellant's mark before discerning anything resembling the clearly defined "S" in the reference mark.

It must also be remembered that the instant goods, consisting of iron and steel products, are hardly in the class of "over the counter" items casually purchased by the average consumer. Granted that the channels of trade, as well as the purchasers, are the same, it would seem that those facts, as a practical matter, would not negate the care and discrimination the purchaser of such items would doubtless exercise if he were to purchase by brand name or symbol rather than price, specification, grade and other elements which are presumably the usual criteria in this field of commerce.

When the dissimilarities between the marks are considered along with the nature of the goods to which they are applied and especially the purchasers thereof, I see no likelihood of confusion. I would reverse.