This Opinion is a
Precedent of the TTAB

Mailed: March 27, 2015

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re Hughes Furniture Industries, Inc.*

_____

Serial No. 85627379

_____

Alan B. Felts of Tuggle Duggins P.A.,
    for Hughes Furniture Industries, Inc.

Alicia Collins Edwards, Trademark Examining Attorney, Law Office 115,
    John Lincoski, Managing Attorney.

_____

Before Mermelstein, Lykos, and Hightower,
    Administrative Trademark Judges.

Opinion by Lykos, Administrative Trademark Judge:

Hughes Furniture Industries, Inc. ("Applicant") seeks registration on the

Principal Register of the mark

displayed at right for "furniture"

in International Class 20.[1]



Registration was refused under Section 2(d) of the Trademark Act of 1946,

15 U.S.C. § 1052(d), on the ground that Applicant's applied-for mark so resembles

_____

[1] Application Serial No. 85627379, filed May 16, 2012, under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), alleging March 1, 2010, as the date of first use anywhere and date of first use in commerce. Applicant has disclaimed the words "Furniture," "Motion," and "Recliners."

the mark **BRADLEY HUGHES** (standard character format) on the Principal Register for "Residential and commercial furniture" in International Class 20[2] that, when used on or in connection with Applicant's identified goods, it is likely to cause confusion or mistake or to deceive.

For the reasons explained below, we affirm the refusal to register.

*I. Evidentiary Issue*

Before addressing the substance of this appeal, we first consider Applicant's objection to the Trademark Examining Attorney's February 2, 2014, submission of evidence as untimely.

By way of background, on October 23, 2013, six months after issuance of the final office action, Applicant timely filed a notice of appeal. Applicant's notice of appeal was not accompanied by a request for reconsideration. Two months later, on December 23, 2013, Applicant timely filed its appeal brief as well as a separately captioned "Request for Remand and Amendment" to enter a disclaimer in the application of the term "Motion," a requirement that was initially made in the Examining Attorney's first office action and subsequently made final.[3] In its request, Applicant stated that after filing its notice of appeal, counsel for Applicant spoke with the Examining Attorney and indicated that it no longer sought to appeal

---

[2] Registration No. 3916977, registered on February 8, 2011, alleging June 14, 2002, as the date of first use anywhere and in commerce.

[3] In the first Office Action dated September 13, 2012, the Examining Attorney required a disclaimer of the words "Furniture" and "Motion" and "Recliners." Applicant partially complied by disclaiming the words "Furniture" and "Recliners" but argued against the requirement to disclaim the word "Motion" based on prior rights in Registration No. 4038175 for the mark MOTION EAZE registered on the Principal Register for the same goods identified in the application at issue in this appeal, "furniture."

the disclaimer requirement. Applicant further stated that entry of the disclaimer would limit the issue on appeal solely to the likelihood of confusion refusal under Section 2(d). Thus, it is clear that Applicant's request was intended simply to comply with the disclaimer requirement and did not constitute an attempt to overcome the Section 2(d) refusal. Because Applicant was seeking to comply with the requirement to enter a disclaimer, this constituted good cause to grant Applicant's request for remand. The Board suspended the appeal, and remanded the application to the Examining Attorney for consideration of Applicant's proposed disclaimer. Board Order dated January 8, 2014. The Examining Attorney deemed Applicant's proposed disclaimer acceptable and entered the disclaimer in the application. However, the Examining Attorney mistakenly treated Applicant's request for remand as a request for reconsideration, and used the occasion to submit additional evidence obtained from the Internet in further support of the likelihood of confusion refusal.

The Examining Attorney now asserts in her appeal brief:

> After the Trademark Examining Attorney's Final Refusal on the likelihood of confusion issue and disclaimer requirement, the Applicant submitted a Request for Reconsideration and Appeal. The Applicant's Request for Reconsideration was in the form of an Appeal Brief.

Examining Attorney's Brief, p. 2.

The Examining Attorney's statements are inaccurate. As the appeal history shows, Applicant did not timely file a request for reconsideration.[4] Applicant's

---

[4] At the time the application was prosecuted and the appeal was briefed, the rule governing the timing of the filing of a request for reconsideration was Trademark Rule 2.64(b),

concurrent submission of its brief and request for remand was filed on December 23, 2013, more than six months following issuance of the Examining Attorney's final refusal on April 23, 2013, and as such, neither filing could constitute a request for reconsideration, which must be filed "prior to the expiration of the time for filing an appeal or petition." Trademark Rule 2.63(b)(3). Rather, Applicant's submission entitled "Request for Remand and Amendment" was filed two months after the notice of appeal and clearly was a request for remand.

Moreover, it was impermissible for the Examining Attorney, upon receipt of the request for remand and acceptance of the amendment, to submit evidence in support of the likelihood of confusion refusal since the refusal was not the subject of Applicant's request for remand. *See In re Diet Tabs, Inc.*, 231 USPQ 587, 588 n.3 (TTAB 1986). That is, the request for remand was only for the purpose of the Examining Attorney's considering the disclaimer offered by Applicant, *see* 6 TTABVue 1 (order remanding application), and therefore the Examining Attorney was limited to accepting or rejecting this disclaimer, and submitting evidence relating to the disclaimer. This is not to say that the Examining Attorney could not have submitted evidence regarding the effect of the disclaimer on the likelihood of confusion ground of refusal, but that was not the case here.

---

37 C.F.R. § 2.64(b), which stated in relevant part, "[d]uring the period between a final action and expiration of the time for filing an appeal, the applicant may request the examiner to reconsider the final action." Effective February 17, 2015, Trademark Rule 2.64 was removed and reserved. The operative rule is now Trademark Rule 2.63(b)(3) which provides that a request for reconsideration may be filed "[p]rior to the expiration of the time for filing an appeal or petition." It is clear that this revision does not alter the deadline for filing a request for reconsideration, and has no effect on our opinion in this case.

If, upon considering the request for remand the Examining Attorney wished to submit additional evidence regarding the Section 2(d) refusal (which was not affected by the disclaimer), the Examining Attorney should have filed with the Board her own request for remand for the purpose of submitting additional evidence in support of the likelihood of confusion refusal. *See* Trademark Rule 2.142(d), 37 C.F.R. § 2.142(d) ("After an appeal is filed, if the … examiner desires to introduce additional evidence, … the examiner may request the Board to suspend the appeal and to remand the application for further examination."). *See, e.g., In re Juleigh Jeans Sportswear Inc.*, 24 USPQ2d 1694, 1696 (TTAB 1992). Such a request for remand would also have to include a showing of "good cause" (*i.e.*, a satisfactory explanation as to why the evidence was not made of record prior to appeal), along with the additional evidence sought to be introduced. *See, e.g., In re Luxuria s.r.o.*, 100 USPQ2d 1146, 1147 (TTAB 2011) (applicant's request for remand denied for failure to show good cause). *See also* Trademark Trial and Appeal Board Manual of Procedure ("TBMP") § 1207.02 (2014) and cases cited therein.

Accordingly, Applicant's objection is sustained, and the Examining Attorney's evidence submitted on February 2, 2014, is not considered to be in the record and, accordingly, has been given no consideration.

*II. Section 2(d) Refusal*

We base our determination under Section 2(d) on an analysis of all of the probative evidence of record bearing on a likelihood of confusion. *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973) ("*du Pont*"). *See*

*also, In re Majestic Distilling Company, Inc.*, 315 F.3d 1311, 65 USPQ2d 1201, 1203 (Fed. Cir. 2003). In any likelihood of confusion analysis, however, two key considerations are the similarities between the marks and the similarities between the goods. *See In re Chatam Int'l Inc.*, 380 F.3d 1340, 71 USPQ2d 1944 (Fed. Cir. 2004); *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 192 USPQ 24 (CCPA 1976). These factors, and the other relevant *du Pont* factors, are discussed below.

We commence with an analysis of the second and third *du Pont* factors – a comparison of the goods and established, likely-to-continue channels of trade. Applicant argues that Applicant and Registrant are offering distinct goods, with Registrant serving a niche market in the furniture industry relating primarily to "luxury" and "artisan-made" furnishings whereas Applicant offers furniture appealing to a broader segment of the public. Applicant's Brief, pp. 10-11. In support, Applicant relies on screenshots from Applicant's and Registrant's respective websites purporting to show the differences in style and quality – for example, Registrant's custom-made teak table versus Applicant's mass-produced sofas, loveseats, and recliners. *See* Applicant's March 13, 2013, Office Action Response Exhibits D, E, and F. In addition, Applicant maintains that the goods are distributed in disparate trade channels with Applicant's goods sold online as compared to Registrant's goods, which are sold via specialty showrooms and through design professionals with registered trade accounts.

Applicant's and Registrant's goods are, however, legally identical. This is because we must compare Applicant's and Registrant's respective goods as they are identified in the application and the cited registration. *See Stone Lion Capital Partners, LP v. Lion Capital LLP,* 746 F.3d 1317, 110 USPQ2d 1157, 1161 (Fed. Cir. 2014); *Octocom Sys., Inc. v. Houston Computers Servs. Inc.,* 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990). Notwithstanding Applicant's argument and evidence regarding the actual scope of its own and the cited Registrant's commercial use of its mark, we may not limit, by resort to extrinsic evidence, the scope of goods as identified in the cited registration or in the subject application. *E.g., In re Dixie Restaurants Inc.,* 105 F.3d 1405, 41 USPQ2d 1531, 1534 (Fed. Cir. 1997); *In re Fisher Scientific Co.,* 440 F.2d 434, 169 USPQ 436, 437 (CCPA 1971); *In re La Peregrina Ltd.,* 86 USPQ2d 1645, 1646 (TTAB 2008); *In re Bercut-Vandervoort & Co.,* 229 USPQ 763, 764 (TTAB 1986). Applicant's broadly worded identification of "furniture" necessarily encompasses Registrant's narrowly identified "residential and commercial furniture." Furthermore, because neither Applicant nor Registrant has limited its products to any particular style, type of consumer, or price point, we must assume that both identifications include "residential and commercial furniture" of all types, styles, and price levels offered to the full range of usual consumers for such goods.

Because the identifications of goods in the application and registration are legally identical and unrestricted as to trade channels, we must also presume that both Applicant's and Registrant's legally identical products travel in the same

ordinary trade and distribution channels and will be marketed to the same potential consumers. *In re Viterra Inc.,* 671 F.3d 1358, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012) (even though there was no evidence regarding channels of trade and classes of consumers, the Board was entitled to rely on this legal presumption in determining likelihood of confusion); *In re Yawata Iron & Steel Co.,* 403 F.2d 752, 159 USPQ 721, 723 (CCPA 1968) (where there are legally identical goods, the channels of trade and classes of purchasers are considered to be the same); *American Lebanese Syrian Associated Charities Inc. v. Child Health Research Institute,* 101 USPQ2d 1022, 1028 (TTAB 2011). The record shows that the ordinary trade and distribution channels of "residential and commercial furniture" include both online retailers and specialty showrooms. Accordingly, the second and third *du Pont* factors (the relatedness of the goods as described in the application and registration and similarity of established, likely to continue trade channels) weigh in favor of finding a likelihood of confusion.

Next we consider the fourth *du Pont* factor, the conditions under which the goods are likely to be purchased, e.g., whether on impulse or after careful consideration, as well as the degree, if any, of sophistication of the consumers. Applicant argues that purchasers of Registrant's custom-made products fall in the market segment of sophisticated, knowledgeable consumers whereas Applicant's goods, while of a high manufactured quality, are not custom-designed. Applicant maintains that the purchasers of Applicant's and Registrant's goods will rarely, if ever, overlap.

While the record shows that Registrant offers furniture pieces that are hand-crafted, because the involved application and registration are unrestricted, we must assume both that Applicant's and Registrant's brands of "residential and commercial furniture" would encompass furniture of all types, not just hand-crafted furniture, including mass-produced furniture, and that they would be sold to the general public under the same conditions. *See Stone Lion,* 110 USPQ2d at 1161. While we acknowledge that consumers are likely to exercise more care in the purchase of an expensive piece of custom-made furniture, because Registrant's identification is not limited to customized furniture sold at a high price point, we must consider all types of "residential and commercial furniture," including those mass produced and sold at lower prices to the less knowledgeable consumer. Further, although furniture in general may not be an "impulse purchase," there is not sufficient evidence in the record to support a finding that potential purchasers exercise a degree of care such that the conditions of sale would weigh against a likelihood of confusion, given the absence of any restrictions in the identifications. We deem this factor neutral.

We now direct our attention to the first *du Pont* likelihood of confusion factor, which involves an analysis of the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression. *See Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772,* 396 F.3d 1369, 73 USPQ2d 1689, 1692 (Fed. Cir. 2005). "The proper test is not a side-by-side comparison of the marks, but instead 'whether the marks are sufficiently

similar in terms of their commercial impression' such that persons who encounter the marks would be likely to assume a connection between the parties." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012) (citation omitted). Our analysis cannot be predicated on dissecting the marks into their various components; that is, the decision must be based on the entire marks, not just part of the marks. *In re Nat'l Data Corp.,* 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985). *See also Franklin Mint Corp. v. Master Mfg. Co.,* 667 F.2d 1005, 212 USPQ 233, 234 (CCPA 1981) ("It is axiomatic that a mark should not be dissected and considered piecemeal; rather, it must be considered as a whole in determining likelihood of confusion."). Finally, we note that it is well-settled that, where the goods are identical, typically less similarity is needed to create a likelihood of confusion. *See, e.g., Viterra*, 101 USPQ2d at 1908; *Century 21 Real Estate Corp. v. Century Life of America*, 970 F.2d 874, 23 USPQ2d 1698, 1700 (Fed. Cir. 1992) ("When marks would appear on virtually identical goods or services, the degree of similarity necessary to support a conclusion of likely confusion declines.").

Applicant argues that because it owns a prior registration for the mark MOTION EAZE, also for "furniture,"[5] consumers will associate Applicant's goods with only that portion of its applied-for mark. In other words, it is Applicant's position that the wording "Motion Eaze" is the dominant feature of Applicant's mark. Applicant further points to distinctions in the wording in its mark as

---

[5] Registration No. 4038175, registered October 11, 2011.

compared to the registered mark (the addition of the letter "H" and words "Furniture," "Motion, Eaze" and "Recliners"), and the fact that the registered mark includes the given name "Bradley." In addition, Applicant contends that the horizontal bars and multilayer rectangles in its mark further distinguish it from the cited mark.

We acknowledge the differences in the marks pointed out by Applicant. Nonetheless, we agree with the Examining Attorney's determination that the surname "Hughes" as it appears in Applicant's mark in relatively larger sized, bold lettering is dominant. We observe that in Applicant's mark the disclaimed word "Furniture" as well as the phrase "Motion Eaze Recliners" (which is disclaimed in part as to the words "Motion" and "Recliners") appears in smaller sized lettering below the larger, more prominently displayed surname HUGHES. Disclaimed matter generally will not constitute the dominant part of a mark. *See Cunningham v. Laser Golf Corp.,* 222 F.3d 943, 55 USPQ2d 1842, 1846 (Fed. Cir. 2000) (quoting *In re Nat'l Data Corp.,* 224 USPQ at 752); *In re Dixie Rests. Inc.,* 105 F.3d 1405, 1407, 41 USPQ2d 1531, 1533-34 (Fed. Cir. 1997); *In re Code Consultants, Inc.,* 60 USPQ2d 1699, 1702 (TTAB 2001) (disclaimed matter is often "less significant in creating the mark's commercial impression"). In addition, the word "Furniture" is generic for the identified goods, and as such carries no source indicating significance. The letter "H" which appears in the left corner of Applicant's mark, as the first initial in the surname "Hughes," merely serves to reinforce the prominence of that portion of the mark. Thus, it is more likely that prospective consumers will

pay less attention to the visually smaller descriptive and generic wording in Applicant's mark and instead treat the proportionally larger word "Hughes" as the dominant source-identifying element. This is especially so given the surname significance of the term "Hughes" which makes it more likely to be the focus of prospective consumers in calling for the goods.

As to the graphics in which the words in Applicant's mark appear, we find that in this case, the presence of these common design elements (consisting of a rectangle enclosing the literal elements and two horizontal lines) fails to mitigate the similar sound, appearance, and connotation of the marks. It is an often-recited principle that when a mark consists of a literal portion and a design portion, the literal portion is usually more likely to be impressed upon a purchaser's memory and to be used in calling for the goods or services; therefore, the literal portion is normally accorded greater weight in determining whether marks are confusingly similar. *See, e.g., Viterra*, 101 USPQ2d at 1911; *In re Dakin's Miniatures, Inc.*, 59 USPQ2d 1593, 1596 (TTAB 1999). *See also CBS Inc. v. Morrow*, 708 F.2d 1579, 1581-82, 218 USPQ 198, 200 (Fed. Cir. 1983); *In re Kysela Pere et Fils, Ltd.*, 98 USPQ2d 1261, 1267-68 (TTAB 2011). This is especially true here where the design features in Applicant's mark merely serve as carriers for the wording and do not include a distinctive element with strong source-identifying characteristics.

Comparing applicant's mark as a whole to the registered mark **BRADLEY HUGHES**, we find that consumers encountering Applicant's and Registrant's marks are more likely to focus on the common surname "Hughes" and mistakenly believe

that the goods of the parties emanate from or are sponsored by the same source. *See, e.g., Chatham Int'l*, 71 USPQ2d at 1946 (JOSE GASPAR GOLD confusingly similar to GASPAR'S ALE); *Harry Winston, Inc. v. Bruce Winston Gem Corp.*, 111 USPQ2d 1419, 1446-47 (TTAB 2014) (BRUCE WINSTON confusingly similar to WINSTON and also to HARRY WINSTON); *In re SL&E Training Stable, Inc.*, 88 USPQ2d 1216, 1219 (TTAB 2008) (holding SAM EDELMAN and EDELMAN, both for wallets and various types of bags, likely to cause confusion, noting that there are strong similarities between the marks because they share the same surname, and that consumers viewing the mark EDELMAN may perceive it as an abbreviated form of SAM EDELMAN because it is the practice in the fashion industry to refer to surnames alone); *Somerset Distilling Inc. v. Speymalt Whisky Distribs. Ltd.*, 14 USPQ2d 1539, 1542 (TTAB 1989) (the JAS. GORDON label shown at right held confusingly similar to GORDON'S). This is especially true given the legally identical nature of goods at issue. *See, e.g., Viterra*, 101 USPQ2d at 1908; *Century 21*, 23 USPQ2d at 1700.

We find that Applicant's mark is similar in sound, appearance, connotation and commercial impression to the cited registered mark. This first *du Pont* factor weighs in favor of finding a likelihood of confusion as well.

To the extent that there are any other *du Pont* factors which may be relevant, we treat them as neutral.

After considering all of the evidence properly of record and arguments pertaining to the *du Pont* likelihood of confusion factors, we find that there is a likelihood of confusion between Applicant's applied-for and Registrant's registered mark.

*Decision***:** The Section 2(d) refusal to register Applicant's mark is affirmed.