This Opinion is a
Precedent of the TTAB

Mailed: November 5, 2025

UNITED STATES PATENT AND TRADEMARK OFFICE

‾‾‾‾

Trademark Trial and Appeal Board

‾‾‾‾

*In re Jason Jimenez*

‾‾‾‾

Serial No. 97551823

‾‾‾‾

Ashok Tankha of Lipton, Weinberger & Husick,
    for Jason Jimenez.

Jonathon Schlegelmilch, Trademark Examining Attorney, Law Office 108,
    Kathryn E. Coward, Managing Attorney.

‾‾‾‾

Before Lykos, Larkin and Lavache,
    Administrative Trademark Judges.

Opinion by Lykos, Administrative Trademark Judge:

Jason Jimenez ("Applicant") seeks to register on the Principal Register pursuant

to Section 2(f) of the Trademark Act, 15 U.S.C. § 1052(f), the standard character mark

GASPER ROOFING (ROOFING disclaimed) for "Roofing consultation; Roofing

contracting; Roofing installation; Roofing maintenance; Roofing maintenance

services; Roofing repair; Roofing services; Maintenance of roofing; Repair of roofing" in International Class 37.[1]

Applicant appealed the Trademark Examining Attorney's final refusal to register the mark on the grounds that Applicant's mark (1) is primarily merely a surname within the meaning of Section 2(e)(4) of the Trademark Act, 15 U.S.C. § 1052(e)(4); and (2) so resembles the registered standard character mark JASPER CONTRACTORS (CONTRACTORS disclaimed) on the Principal Register for "Roofing services" in International Class 37, that it is likely to cause confusion or mistake or to deceive under Trademark Act Section 2(d), 15 U.S.C. § 1052(d).[2]

When he filed his notice of appeal, Applicant requested reconsideration of both refusals, but the Examining Attorney denied Applicant's request and maintained each final refusal.[3] Upon resumption of the appeal, Applicant and the Examining

---

[1] Application Serial No. 97551823, filed August 17, 2022 under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), alleging January 1, 1972 as the date of first use anywhere and in commerce. Applicant claims acquired distinctiveness under Section 2(f) as to the entirety of its mark.

Citations to the prosecution file refer to the USPTO's Trademark Status & Document Retrieval ("TSDR") system in Portable Document Format ("PDF"). Citations to the record also include references to TTABVUE, the Board's online docketing system. *See, e.g., Turdin v. Trilobite, Ltd.*, No. 94002505, 2014 TTAB LEXIS 17, at *6 n.6.

This opinion cites decisions of the U.S. Court of Appeals for the Federal Circuit and the U.S. Court of Customs and Patent Appeals by the pages on which they appear in the Federal Reporter (e.g., F.2d, F.3d, or F.4th). For decisions of the Board, this opinion uses citations to the Lexis legal database as well as the TTABVUE proceeding number, where available. *See* TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) § 101.03(a)(2) (2025) for acceptable citation options to TTAB cases.

[2] Registration No. 3867023, registered October 26, 2010 on the Principal Register; renewed. The Examining Attorney also initially made a third refusal that the original specimen was unacceptable but this refusal was withdrawn.

[3] 2 and 4 TTABVUE.

Attorney filed briefs addressing the surname and likelihood of confusion refusals.[4] The Board then sua sponte suspended the appeal and remanded the application to the Examining Attorney for consideration of Applicant's evidence submitted during prosecution in support of his claim of acquired distinctiveness under Trademark Act Section 2(f), 15 U.S.C. § 1052(f), which had not been previously addressed, and the related issue of a disclaimer of the generic wording ROOFING in Applicant's mark.[5] The Examining Attorney accepted Applicant's claim of acquired distinctiveness and disclaimer, thereby obviating the surname refusal.[6]

The Board resumed proceedings.[7] The remaining issue before the Board is the likelihood of confusion refusal. For the reasons explained below, we reverse.

I.    Evidentiary Objection

As a preliminary issue, we address an evidentiary objection raised during briefing.

---

[4] Applicant's submission with his appeal brief of portions of the prosecution record was superfluous and the Board strongly discourages this practice. *See In re Info. Builders Inc.*, No. 87753964, 2020 TTAB LEXIS 20, at n.4 (attaching previously submitted evidence to an appeal brief is unnecessary and impedes efficient disposition of the appeal by the Board), *appeal dismissed*, No. 20-1979 (Oct. 20, 2020).

[5] 10 TTABVUE.

[6] 11 TTABVUE. Because Applicant's Section 2(f) claim was not made in the alternative, the claim constituted a concession that Applicant's mark is not inherently distinctive. *Cold War Museum, Inc. v. Cold War Air Museum, Inc.*, 586 F.3d 1352, 1358 (Fed. Cir. 2009) ("where an applicant seeks registration on the basis of Section 2(f), the mark's descriptiveness is a nonissue; an applicant's reliance on Section 2(f) during prosecution presumes that the mark is descriptive").

[7] 12 TTABVUE. In light of the Examining Attorney's acceptance of Applicant's claim of acquired distinctiveness under Section 2(f), the Board did not deem supplemental briefing necessary.

The Board initiated a second remand to clarify Applicant's name and entity type. 13 TTABVUE. The Examining Attorney promptly rectified this issue by Examiner's Amendment dated June 12, 2025 to indicate that Applicant's name is Jason Jimenez, and that he has applied in his capacity as an individual, not as a limited liability company.

Applicant included links to and screenshots of YouTube videos in his brief.[8] The Examining Attorney objects to this evidence on the grounds of untimeliness and improper format.[9]

The objection is sustained. The record in an application should be complete prior to the filing of an appeal. Trademark Rule 2.142(d), 37 C.F.R. § 2.142(d). The hyperlinks and the descriptions of their alleged content on YouTube embedded in Applicant's brief constitute an improper attempt to augment the record. And even if timely, providing only a link and screenshot to a video is insufficient to make its content of record due to the transitory nature of websites. *See In re Change Wind Corp.*, No. 86046590, 2017 TTAB LEXIS 233, at *23 n.8 (providing only a web address or hyperlink is insufficient to make such materials of record); *In re HSB Solomon Assocs. LLC*, No. 77136242, 2012 TTAB LEXIS 79, at *9 (Board will not utilize web address to access site and consider whatever content appears). The hyperlinks to the videos embedded in Applicant's appeal brief, the screenshots themselves, and any arguments associated therewith have been given no consideration.

For future reference, we note that applicants may make video files of record during prosecution by submitting them in one of the formats designated as acceptable by the USPTO, such as .wav, .wmv, .wma, .mp3, .mpg, or .avi format, and in a size not to exceed 30 MB. *See, e.g., In re Fantasia Distrib., Inc.*, No. 86185623, 2016 TTAB LEXIS 471, at *21 n.13 (TEAS accepts multimedia evidence, including video files

---

[8] Applicant's Brief, pp. 10-11; 6 TTABVUE 11-12.

[9] Examining Attorney's Brief, p. 3; 8 TTABVUE 3.

under 30 MB); *cf.* TRADEMARK MANUAL OF EXAMINING PROCEDURE ("TMEP") § 904.03(l) ("Specimens for Motion Marks") (May 2025). This is the preferred mechanism for making such evidence of record not only because of the technical ease and capacity of the Trademark Examining Operation's ("TMEO") electronic filing system,[10] but also because the evidence can be addressed prior to the appeal stage. *See In re Ox Paperboard, LLC*, No. 87847482, 2020 TTAB LEXIS 266, at *1.

The Board will consider videos that are timely and properly made of record during prosecution. *See, e.g., In re Gen. Mills IP Holdings II, LLC*, No. 86757390, 2017 TTAB LEXIS 262, at *31 n.56 (Board considered audio-visual materials containing television commercials in evaluating whether applicant's proposed single-color mark had acquired distinctiveness); *see also* TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE ("TBMP") § 1208.03 (2025). Once the Board has jurisdiction over an ex parte appeal involving an application and the time for filing a request for reconsideration has lapsed, the only way to make a new video of record is to file with the Board a separately captioned written request for remand with a showing of good cause prior to the deadline for filing an applicant's main appeal brief. *See* TBMP §§ 1207.02 ("Request to Remand for Additional Evidence") and 1209.04 ("Remand in Appeal of Refusal of Application - Upon Request by Applicant") and cases cited therein. Practitioners should note that unlike during prosecution with TMEO, ESTTA, the Board's filing system for uploading submissions via TTABVUE does not have the technical capacity to accept video files. Applicants should, if possible, file a

---

[10] For more information regarding TMEO's electronic filing system, *see* TMEP § 301.01(a).

transcript of the video content to support the request for remand with the Board, and indicate that if and when the remand request is granted and jurisdiction is restored to the examining attorney, the applicant will submit the video file through TMEO's electronic filing system so that it can be uploaded to TSDR.[11] This is another reason why applicants should not wait until after the filing of a notice of appeal to attempt to make video evidence of record.

## II. Likelihood of Confusion under Trademark Act Section 2(d)

Section 2(d) of the Trademark Act prohibits the registration of a mark that:

> [c]onsists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods [or services] of the applicant, to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1052(d).

Our determination under Section 2(d) is based on an analysis of all of the probative evidence of record bearing on the likelihood of confusion. *In re E. I. DuPont de Nemours & Co.*, 476 F.2d 1357, 1361 (CCPA 1973) ("*DuPont*"), *cited in B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 144 (2015); *see also In re Majestic Distilling Co.*, 315 F.3d 1311, 1315 (Fed. Cir. 2003). In making our determination, we have considered each *DuPont* factor for which there is evidence and argument. *See In re Guild Mortg. Co.*, 912 F.3d 1376, 1379 (Fed. Cir. 2019).

---

[11] Alternatively, applicants may mail to the Board an Internet video file in CD or DVD format. Applicants should concurrently file in ESTTA a "placeholder" exhibit page to indicate that the CD or DVD was mailed to the Board to make clear that the evidence is part of the record. *See* TBMP § 106.03. That being said, electronic submissions are preferred.

Varying weights may be assigned to each *DuPont* factor depending on the evidence presented. *See Citigroup Inc. v. Cap. City Bank Grp. Inc.*, 637 F.3d 1344, 353 (Fed. Cir. 2011). "Each case must be decided on its own facts and the differences are often subtle ones." *Indus. Nucleonics Corp. v. Hinde,* 475 F.2d 1197, 1199 (CCPA 1973). In any likelihood of confusion analysis, two key considerations are the similarities between the marks and the similarities between the services. *See In re i.am.symbolic, LLC*, 866 F.3d 1315, 1322 (Fed. Cir. 2017) (quoting *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1164-65 (Fed. Cir. 2002)); *see also Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 1103 (CCPA 1976) ("The fundamental inquiry mandated by § 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks."). These factors, and others, are discussed below.

A. The Services and the Established, Likely-to-Continue Channels of Trade and Classes of Consumers

We commence by comparing the services as identified in the application and cited registration. *See In re Detroit Athletic Co.*, 903 F.3d 1297, 1307 (Fed. Cir. 2018); *Stone Lion Cap. Partners, LP v. Lion Cap. LLP*, 746 F.3d 1317, 1323 (Fed. Cir. 2014); *Hewlett-Packard Co. v. Packard Press Inc.*, 281 F.3d 1261, 1267 (Fed. Cir. 2002); *Octocom Sys., Inc. v. Hous. Comput. Servs. Inc.*, 918 F.2d 937, 942 (Fed. Cir. 1990). The sole service identified in the cited registration, "roofing services," is identical to the "roofing services" identified in the application and encompasses each of the specific roofing services listed in the application. *See Sw. Mgmt., Inc. v. Ocinomled, Ltd.,* No. 92080469, 2015 TTAB LEXIS 176, at *60-61 (given broad identification of

services, "we must presume that the services encompass all services of the type identified"), *aff'd*, 652 Fed. Appx. 971 (Fed. Cir. 2016); *Info. Builders*, 2020 TTAB LEXIS 20, at *9-11 (finding services legally identical in part where registrant's services encompassed by applicant's services). This *DuPont* factor therefore weighs in favor of finding a likelihood of confusion.

This brings us to the established, likely-to-continue channels of trade and classes of consumers. *DuPont*, 476 F.2d at 1361. Because the services are identical and unrestricted as to trade channels and consumer classes, we must presume that the services travel in the same ordinary trade and distribution channels and will be marketed to the same potential consumers. *See In re Viterra Inc.*, 671 F.3d 1358, 1362 (Fed. Cir. 2012) (even though there was no evidence regarding channels of trade and classes of consumers, the Board was entitled to rely on this legal presumption in determining likelihood of confusion); *In re Yawata Iron & Steel Co.*, 403 F.2d 752, 771 (CCPA 1968) (where there are legally identical goods, the channels of trade and classes of purchasers are considered to be the same). This *DuPont* factor also weighs in favor of finding a likelihood of confusion.

B.  The Marks

Keeping in mind that where the services are identical, the degree of similarity between the marks necessary to support a determination that confusion is likely declines, *Bridgestone Ams. Tire Operations, LLC v. Fed. Corp.*, 673 F.3d 1330, 1337 (Fed. Cir. 2012), we now consider the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression. *See Palm*

*Bay Imps. Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1371 (Fed Cir. 2005) (citing *DuPont*, 476 F.2d at 1361). "Similarity in any one of these elements may be sufficient to find the marks confusingly similar." *In re Inn at St. John's, LLC*, 2018 TTAB LEXIS 170, at *13 (quoting *In re Davia,* No. 85497617, 2014 TTAB LEXIS 214, at *21-24, *aff'd per curiam*, 777 F. App'x 516 (Fed. Cir. 2019); *accord Krim-Ko Corp. v. Coca-Cola Bottling Co.*, 390 F.2d 728, 732 (CCPA 1968) ("It is sufficient if the similarity in either form, spelling or sound alone is likely to cause confusion.") (citation omitted).

"Similarity is not a binary factor but is a matter of degree." *In re St. Helena Hosp.*, 774 F.3d 747, 751 (Fed. Cir. 2014) (quoting *In re Coors Brewing Co.*, 343 F.3d 1340 1344 (Fed. Cir. 2003)). The proper test regarding similarity "is not a side-by-side comparison of the marks, but instead whether the marks are sufficiently similar in terms of their commercial impression such that persons who encounter the marks would be likely to assume a connection between the parties." *Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 1373 (Fed. Cir. 2018) (quoting *Coach Servs. Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1368 (Fed. Cir. 2012) (internal quotation marks and citation omitted)). The focus is on the recollection of the average purchaser, who normally retains a general rather than a specific impression of trademarks. *In re St. Julian Wine Co.*, No. 87834973, 2020 TTAB LEXIS 196, at *13; *In re Bay State Brewing Co., Inc.,* No. 85826258, 2016 TTAB LEXIS 46, at *9 (citing *Spoons Rests. Inc. v. Morrison Inc.*, No. 91079317, 1991 TTAB LEXIS 53, at *18, *aff'd per curiam*, 972 F.2d 1353 (Fed. Cir. 1992)).

Our analysis cannot be predicated on dissecting the marks into their various components; that is, the decision must be based on the entire marks, not just part of the marks. *In re Nat'l Data Corp.*, 753 F.2d 1056 (Fed. Cir. 1985). *See also Franklin Mint Corp. v. Master Mfg. Co.*, 667 F.2d 1005, 1007 (CCPA 1981) ("It is axiomatic that a mark should not be dissected and considered piecemeal; rather, it must be considered as a whole in determining likelihood of confusion."). "No element of a mark is ignored simply because it is less dominant, or would not have trademark significance if used alone." *In re Electrolyte Labs. Inc.*, 929 F.2d 645, 647 (Fed. Cir. 1990) (citing *Spice Islands, Inc. v. Frank Tea & Spice Co.*, 505 F.2d 1293 (CCPA 1974)). Nonetheless, there is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a mark, provided the ultimate conclusion rests on a consideration of the marks in their entireties. *Detroit Athletic Co.*, 903 F.3d at 1305 (quoting *Nat'l Data Corp.*, 753 F.2d at 1058); *see also Sabhnani v. Mirage Brands, LLC*, No. 92068086, 2021 TTAB LEXIS 464, at *31.

We now compare Applicant's mark GASPER ROOFING with the cited mark JASPER CONTRACTORS, both in standard characters. The Examining Attorney argues that the marks are similar in sound, appearance, connotation and commercial impression because the first terms, GASPER and JASPER, are dominant and are "nearly identical."[12] The Examining Attorney asserts that the surname GASPER and the term JASPER are phonetic equivalents because GASPER can be pronounced with a hard or soft letter "g" sound. In making this finding, the Examining Attorney relies

---

[12] 8 TTABVUE 5.

solely on the line of case law holding that there is no correct pronunciation of a mark, citing cases such as *Viterra,* 671 F.3d at 1367 (comparing XCEED versus X-SEED (stylized) and finding that "substantial evidence supports the Board's determination that any minor differences in the sound of these marks may go undetected by consumers") and *Interlego AG v. Abrams/Gentile Entm't, Inc.*, No. 91103612, 2002 TTAB LEXIS 200, at *5 (comparing LEGO versus MEGO).

The case law relied on by the Examining Attorney does not require us to find that GASPER and JASPER would be pronounced the same. Generally, the principle that there is no correct pronunciation of a mark applies with greater force when one of the marks involved is a coined mark without a specific meaning. As explained by the U.S. Court of Appeals for the Federal Circuit in *StonCor Grp., Inc. v. Specialty Coatings, Inc.*, 759 F.3d 1327, 1331-32 (Fed. Cir. 2014), "there is no correct pronunciation of a trademark that is not a recognized word."[13] *Accord Chas. Pfizer & Co., Inc. v. R. J. Moran Co.*, 1960 TTAB LEXIS 105, at *4 (finding that DIABINESE and DIABLAISE "when spoken are substantially similar in sound" because "there is no correct pronunciation of a mark" where the marks are "coined marks having no specific meaning and no established pronunciation"). In other words, this principle may apply to instances involving an invented term devoid of any known or understood meaning.

---

[13] In *StonCor Grp.*, the Court found that the Board erred in failing to credit the opposer's testimony that consumers would pronounce "STON" as "stone" in its coined mark STONSHIELD. 759 F.3d at 1331. The Court observed that the prefix in the opposer's mark is neither a word in English nor in any other language. *Id.* at 1332. The Court found that "[w]here a trademark is not a recognized word and the weight of the evidence suggests that potential consumers would pronounce the mark in a particular way, it is error for the Board to ignore this evidence entirely and supply its own pronunciation." *Id.*

*See, e.g., Inter Ikea Sys. B.V. v. Akea, LLC*, No. 91196527, 2014 TTAB LEXIS 166, at *18 (finding IKEA and AKEA confusingly similar, where "both marks are coined terms that look alike and sound alike" with "no apparent meaning in any language"); *In re Cresco Mfg. Co.*, 1963 TTAB LEXIS 84, at *2 ("The terms "CRESCO" and "KRESSCO" are phonetically indistinguishable; both terms are obviously derived from their respective corporate names and they are equally arbitrary in nature as applied to the products to which they are applied."). In this case, we find that the lead letters "G" and "J" in the marks would be pronounced differently, and that the entire marks differ in pronunciation, for the reasons discussed below.

As explained in Section 1209.01(a) of the TMEP, coined or fanciful marks are

> terms that have been invented for the sole purpose of functioning as a trademark or service mark. Such marks comprise words that are either unknown in the language (e.g., PEPSI, KODAK, and EXXON) or are completely out of common usage (e.g., FLIVVER).

The record demonstrates that neither the word "jasper" nor the surname "Gasper" is a coined term.[14] As a result, and contrary to the Examining Attorney's position, the

---

[14] The record in this appeal establishes that "Gasper" is a recognized surname. *See* June 14, 2024 Office Action at TSDR 7 (negative dictionary evidence from the online U.S. English version of The Oxford Learner's Dictionary) and 11 (U.S. Census Data). *See also* footnote 6, *supra*.

We take judicial notice from the online version of THE MERRIAM-WEBSTER DICTIONARY that "jasper" is a recognized word in U.S. English defined as a "an opaque cryptocrystalline quartz of any of several colors *especially* **:** green chalcedony." *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/jasper. Accessed October 31, 2025. *See In re Zuma Array Ltd.*, 2022 LEXIS 281 at *15 n.18 (Board took judicial notice of meaning of the word "module"). We take further judicial notice that "Jasper" may also refer to "a city in NW Alabama;" "a resort town in SW Alberta;" or "a male given name"; or slang for "a fellow: guy." Dictionary.com https://www.dictionary.com/browse/jasper. Accessed October 31, 2025.

case law discussed above does not require us to find that these two terms may be pronounced in an identical manner. The Examining Attorney merely speculates and assumes, without evidentiary support, that "jasper" and "Gasper" are pronounced the same. *Cf. StonCor Grp.*, 759 F.3d at 1331 (the Board erred in failing to credit the opposer's testimony that consumers would pronounce "STON" as "stone" in its coined mark STONSHIELD). The record in this case establishes that "Gasper" is a surname that begins with the letter strings "G-a-s" and "G-a-s-p," each of which forms the words "gas" and "gasp" that are recognized in U.S. English, and pronounced with a hard letter "g" sound. *See Great Lakes Canning*, No. 365360, 1985 TTAB LEXIS 75 at 4 ("the pronunciation given by dictionaries for "Cana", per se, is a "long first a" pronunciation."). The dictionary entry for "jasper" further shows that it is pronounced as "ˈja-spər" with the soft letter "j" sound and not with the hard letter "g" sound. Therefore, contrary to the Examining Attorney's argument, we find that "Gasper" would be pronounced with a hard letter "g" sound and that "Jasper" would be pronounced with a soft "j" sound, consistent with the rules of pronunciation for U.S. English. We find that "Gasper" and "Jasper" sound different when verbalized.

The additional wording in each mark, ROOFING and CONTRACTORS, albeit disclaimed, further contributes to differences in sound and appearance. To state the obvious, the words "roofing" and "contractors" look and sound completely different.

The presence of the words ROOFING and CONTRACTORS in the respective marks also engenders differences in connotation and commercial impression when the marks are considered in their entireties. Consistent with the Examining

Attorney's issuance of a refusal under Trademark Act Section 2(e)(4), the primary connotation and commercial impression of Applicant's mark GASPER ROOFING is that of a surname. The word "jasper" projects the connotation and commercial impression of a semi-precious stone. And even assuming arguendo that JASPER in the cited mark JASPER CONTRACTORS is also perceived as a surname, it is a different surname than GASPER. We find, in sum, that the marks in their entireties are different in appearance, pronunciation, connotation, and overall commercial impression which weighs against a finding of likelihood of confusion.

C.  Purchasing Conditions

We now consider '[t]he conditions under which and buyers to whom sales are made, i.e. 'impulse' vs. careful, sophisticated purchasing.'" *DuPont*, 476 F.2d at 1361. A heightened degree of care when making a purchasing decision may tend to minimize likelihood of confusion. *See, e.g., In re N.A.D., Inc.*, 754 F.2d 996, 999-1000 (Fed. Cir. 1985) (because only sophisticated purchasers exercising great care would purchase the relevant goods, there would be no likelihood of confusion merely because of the similarity between the marks NARCO and NARKOMED). Conversely, impulse purchases of inexpensive services may tend to have the opposite effect. *Palm Bay Imps.,* 396 F.3d at 1376.

Neither the application nor cited registration limit the identified roofing services to any particular type or consumer, meaning that they encompass both commercial and residential. Roofing services, by their intrinsic nature, are not impulse purchases but are relatively expensive and would ordinarily be purchased with a relatively high

degree of care. *See In re Charger Ventures LLC,* 64 F.4th 1375, 1378-79 (Fed. Cir. 2023) (noting the Board's finding that the identified real estate services are "not average consumer services" and that the purchaser would exercise elevated care due to the nature and cost of real estate services); *Info. Builders*, 2020 TTAB LEXIS 20, at *14 ("[I]n light of the inherent nature of the goods and services involved, some degree of purchasing care may be exercised by Applicant's potential or actual consumers."); *Edwards Lifesciences Corp. v. VigiLanz Corp.*, No. 91154210, 2010 TTAB LEXIS 84, at *51 ("Just based on the products involved in this proceeding [medical monitors], one would expect that all of the purchasers would exercise a high degree of care when making their purchasing decision."). Indeed, Applicant's substitute specimen touts his ability to assist his customers with insurance claims,[15] and Applicant's website invites consumers to schedule a consultation and advertises that Applicant offers financing options.[16] This evidence supports a finding that roofing service purchases may involve multiple steps and may be complex. As a result, even the least sophisticated consumer is likely to exercise an elevated level of care. This *DuPont* factor therefore weighs against a likelihood of confusion.

D. Actual Confusion and Contemporaneous Use

Lastly, we address Applicant's argument that the Examining Attorney's failure to present evidence of instances of actual confusion indicates that Applicant's and Registrant's marks are dissimilar. Applicant's assertions implicate the "nature and

---

[15] Substitute Specimen filed August 17, 2022.

[16] August 23, 2023 Response to Office Action at TSDR 34 (www.gasperroofing.com accessed on 23 August. 2023).

extent of any actual confusion," and the "length of time during and conditions under which there has been concurrent use without evidence of actual confusion." *DuPont*, 476 F.2d at 1361. The Examining Attorney is under no obligation to adduce such evidence in an ex parte appeal.

In any event, "[t]he relevant test is likelihood of confusion, not actual confusion." *Detroit Athletic Co.*, 903 F.3d at 1309. "[A] showing of actual confusion is not necessary to establish a likelihood of confusion." *Herbko Int'l*, 308 F.3d at 1165 (citing *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1571 (Fed. Cir. 1983)); *cf. Sunkist Growers, Inc. v. Intrastate Distrib. Inc.*, 144 F.4th 1376, 1381 (Fed. Cir. 2025). We deem both of these *DuPont* factors neutral.

E.  Weighing the *DuPont* Factors

The final step in analyzing likelihood of confusion is to weigh the *DuPont* factors for which there has been evidence and argument; "explain the results of that weighing;" and discuss "the weight [we] assigned to the relevant factors." *Charger Ventures LLC*, 65 F.4th at 1379. "No mechanical rule determines likelihood of confusion, and each case requires weighing of the facts and circumstances of the particular mark." *In re Mighty Leaf Tea*, 601 F.3d 1342, 1346 (Fed. Cir. 2010). "[T]he weight afforded to each factor depends on the circumstances" and "[a]ny single factor may control a particular case." *Stratus Networks, Inc. v. UBTA-UBET Commc'ns Inc.*, 955 F.3d 994, 998 (Fed. Cir. 2020).

We have carefully considered all of the evidence made of record, as well as all of the arguments related thereto. The services are identical, which weighs heavily in

favor of concluding that confusion is likely. Because the services are identical and unrestricted as to trade channels and consumers classes, we can rely on the presumption that the services travel in the same ordinary trade and distribution channels and will be marketed to the same potential consumers which also favors a likelihood of confusion. The marks, however, are different in their entireties, weighing heavily against finding a likelihood of confusion. Because purchasing decisions for the services will likely be made with an elevated degree of care, this *DuPont* factor also weighs against a likelihood of confusion. The remaining factors discussed above are neutral.

We find that the dissimilarity of the marks in sound, appearance, meaning and commercial impression is sufficiently great that, coupled with an elevated level of purchaser care, outweighs the identical nature of the services, trade channels and classes of consumers. We conclude that there is no likelihood of confusion.

**Decision**: The Section 2(d) refusal is reversed.